AGNES THOMAS, Appellant, v. MATTHIAS J. HENS and Others, as Executors, etc., of IRENE A. ROONEY, Deceased, and Others, Respondents.

Fourth Department, June 29, 1928.

Killeen & Sweeney [James C. Sweeney of counsel; Henry W. Killeen with them on the brief], for the appellant.

Bagley, Wechter, McCormick & Irvin [Joseph A. Wechter of counsel; John V. Maloney and Harold C. Brown with them on the brief], for the respondents.

TAYLOR, J. This may be sufficiently described as an equity action to obtain specific performance of an oral agreement claimed

to have been made between plaintiff's father and his second wife, under which the former willed to the latter a large portion of his estate, in consideration of the wife's agreement to will all of that property remaining at her death to plaintiff, if plaintiff survived her; otherwise, to plaintiff's children. The action has been twice tried. Plaintiff was nonsuited on the first trial (June, 1926), and the judgment was reversed and a new trial granted. (*Thomas* v. *Hens*, 219 App. Div. 627.) This time the complaint was dismissed on the merits. The main facts are stated in the opinion of this court just cited. We are restating some of them, with additional facts, in the interest of convenience and a full understanding of the case.

Plaintiff is the only child of Edward A. Rooney by his first wife. Her father went into partnership in Buffalo in 1901 with John Sinclair, under the name of Sinclair, Rooney & Co., which was later incorporated. After incorporation Sinclair was president and Rooney vice-president and general manager, and Rooney and Sinclair were the principal stockholders. The business was a prosperous one. Rooney also owned a one-half interest in the real estate occupied by the company, and owned bank stocks and other stocks and property, including " Ledgewood," a residence in Amherst, N. Y. Rooney was divorced in 1899 and married Irene A. Dunne in October, 1917. After this marriage he placed the title to Ledgewood in his wife and himself as tenants by the entirety. The learned trial court found that when this marriage took place and at the time of Rooney's death he was worth not less than $250,000.

Rooney made his will October 29, 1918, a year and twenty days after his second marriage, and died four months after making the will. He was fifty years old when he married the second time and his wife forty-eight. The wife knew when she was married that she would be unable to bear children.

A normally affectionate relationship existed between Edward A. Rooney and his daughter and her children. There is no suggestion to the contrary. Rooney, by his will, left his half interest in the real estate occupied by Sinclair, Rooney & Co. to plaintiff. It was worth about $46,000, and plaintiff also collected $11,000 insurance upon her father's life. Rooney gave $25,000 in bequests of $5,000 each to his brothers and sisters, and all the rest of his property to his second wife. This property left to the wife was worth over $178,000. Ledgewood (worth $32,500) and some Liberty Theatre bonds worth $7,000 had been presented by Edward Rooney to his wife before his death. The executors of Edward Rooney's will were his wife and his brother, William B. Rooney. This will was

admitted to probate March 7, 1919, and within a month Irene Rooney prepared in her own handwriting and signed and had attested by one witness what she evidently intended to be a will, leaving practically all her property to the plaintiff and nothing to plaintiff's children, except a ring to one of them. If this attempted will had been a valid one, the wife would have left plaintiff somewhat more property than she received under the will of her husband. But plaintiff claims in this action only that which her stepmother received under her husband's will, pursuant to the claimed agreement.

Irene Rooney died July 7, 1924. About five months before her death she made a will. In it she left nothing to plaintiff, but left all her property, including that obtained under her husband's will, to persons unrelated either to her husband or herself by blood or marriage, except one cousin. The property which she obtained under her husband's will, and which she had at his death, consisted of various stocks and bonds.

To make out plaintiff's claim that her father willed the bulk of his estate to his second wife in consideration of her promise to will to plaintiff all that remained of the estate after her death, plaintiff relies upon the will which the widow attempted to make in March, 1919, and upon the testimony of four witnesses in chief, namely, William B. Rooney (Edward's brother), Mary Ryan (Edward's sister) and Harry and Catherine L'Hommedieu, intimate friends of Edward Rooney.

The parties disagree heartily as to the true import of the testimony of these witnesses; but in general terms they testified as follows: William B. Rooney, that when he and Irene Rooney were going home in an automobile after Edward's funeral he told the widow that the will was all wrong, and she said it was not according to her understanding with Ed; that then she said, " Will, Ed trusted me and I want you to trust me. I promised Ed and I promise you that every penny will go to Agnes and the children." Mary Ryan testified that on the Sunday after Edward's funeral, Irene said to her, " I have prayed hard there in Mass to-day that God will give me strength to keep my promise to Ed. He said I could marry again if I wanted to, but he didn't want any strangers to enjoy the money he worked so hard for, and he wanted that to go back to Agnes and the children."

Harry and Catherine L'Hommedieu testified at both the first and second trials (as did William Rooney and Mary Ryan). Their testimony was substantially to the effect that Edward Rooney made two declarations to them in the presence of Irene (Dunne) Rooney; the first, the night before the marriage, that he was about

to make an arrangement, and the second about a month after he made his will to the effect that he had made an arrangement, under which, after his death, all his property, excepting his interest in the real estate which the company occupied, would go to Irene during her lifetime, and to his daughter and grandchildren after Irene's death; and that Irene on neither occasion said anything in contradiction or otherwise. The L'Hommedieus testify that neither William Rooney nor Mary Ryan knew anything about Edward's declarations to the L'Hommedieus until more than a year after this suit was brought.

The learned trial court found that when Irene attempted to make the will on March 30, 1919, she owned property not received under the will of her husband which was more than sufficient in value to pay all specific bequests which Irene then intended and attempted to make by her will.

This court held on the first appeal that plaintiff had made out a *prima facie* case. The same testimony, in substance, was introduced by plaintiff on the second trial. We find this record practically devoid of testimony tending to rebut or contradict that offered in behalf of plaintiff. In fact, the testimony of defendants' six witnesses has no direct bearing upon the issues involved. Edward's will and Irene's attempted will, taken together, point to the conclusion that they agreed that Irene would make her will in favor of plaintiff if plaintiff survived her. Edward left property worth over $46,000 to plaintiff. Irene's attempted will left property worth more than $200,000 to plaintiff. Neither left anything to the children, probably because plaintiff was alive and could be trusted to see to it that her children succeeded to her property interests at her death. These facts and the declarations of Edward and Irene, as testified to, furnish cogent proof that Edward and Irene made the claimed arrangement for the benefit of plaintiff and her children; that this arrangement was partially concluded; that Edward did all that he had agreed to do to carry out his contract; that Edward's declaration made one month after he had made his will shows that his will was a part of the arrangement; that Irene's attempted will is persuasive proof that she understood and then intended to carry out her agreement with her husband, but that for some reason now unknown she failed to complete, although she had stated her intention to do so.

The enforcement of this compact is reasonable. The second wife was amply provided for during her lifetime. At her death that which remained of Edward's estate — the use of which was in the wife while she lived — goes to Edward A. Rooney's daughter, where it naturally should go, and not to those in whom Edward A.

Rooney had no interest at all. This is not making another will for Edward A. Rooney. It is enforcing a reasonable and fair agreement made for the benefit of Rooney's only child by Rooney and his second wife, a compact enforcible by plaintiff in this action. (*Seaver* v. *Ransom*, 224 N. Y. 233; *Hermann* v. *Ludwig*, 186 App. Div. 287; affd., 229 N. Y. 544.)

We find that plaintiff has sustained the burden of proof resting upon her. The position taken by the court in *Hamlin* v. *Stevens* (177 N. Y. 39) is accounted for by the fact that the claimed contract there involved was to the detriment of those naturally entitled to receive decedent's estate. That case is distinguished and the rule here applicable well stated in *McKeon* v. *Van Slyck* (223 N. Y. 392, 397, 398.) That rule, indorsed in *Ward* v. *N. Y. Life Ins. Co.* (225 N. Y. 314) and *Matter of Sherman* (227 id. 350), is as follows: " In civil cases a plaintiff is never required to prove his case by more than a preponderance of evidence. This is as true of actions against an executor, founded on claims put forward for the first time after the death of the testator, as it is of other actions. (*Lewis* v. *Merritt*, 113 N. Y. 386.) No doubt in determining whether the preponderance exists, the triers of the facts must not forget that death has sealed the lips of the alleged promisor. They may reject evidence in such circumstances which might satisfy them if the promisor were living. They must cast in the balance the evidence offered upon the one side and the opportunities for disproof upon the other. They may, therefore, be properly instructed that to make out a preponderance, the evidence should be clear and convincing. (*Roberge* v. *Bonner*, 185 N. Y. 265.) But all these instructions in last analysis are mere counsels of caution. The responsibility of determining whether the evidence is clear and convincing must ultimately rest upon the jury, subject, of course, to the power of the court to set aside their verdict. There is no rule of law that the claimant's contract must be in writing, or even that it must be made out in all substantial particulars by disinterested witnesses. *Hamlin* v. *Stevens* (177 N. Y. 39) is sometimes cited for such a rule, but mistakenly."

Having in mind this rule, plaintiff's proof seems ample and stands substantially unrebutted. William B. Rooney and Mary Ryan cannot be classed as interested witnesses, and the L'Hommedieus are certainly disinterested. The learned trial justice, in his opinion, says that he has not the slightest doubt of the perfect honesty and sincerity of both Mr. and Mrs. L'Hommedieu, and states his conviction regarding their veracity " with emphasis." He also states his belief that William B. Rooney and Mary Ryan did not intentionally give false testimony. That

no writing was made manifesting the claimed contract, and that Edward Rooney's will does not disclose any intention to vest his property ultimately in his daughter, do not devitalize the case made by the plaintiff. Edward Rooney, careful business man though he was, may well have implicitly trusted his wife and have thought it poor taste and indicating little confidence in her integrity to hamper her holdings under his will with trusts or uses.

This case has been tried twice. Undoubtedly the parties have introduced all possible proof on each side. Our consideration of the testimony has convinced us that the judgment appealed from should be reversed and judgment granted for the plaintiff as demanded in the complaint.

All findings of fact and conclusions of law are disapproved and reversed and new findings and conclusions made.

All concur, except HUBBS, P. J., who dissents and votes for affirmance. Present — HUBBS, P. J., SEARS, CROUCH, TAYLOR and SAWYER, JJ.

Judgment reversed on the facts, with costs, and judgment directed for the plaintiff for the relief demanded in the complaint, with costs. All findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.