COLGROVE *v.* GOODYEAR.

1. SPECIFIC PERFORMANCE—ORAL AGREEMENT TO LEAVE PROPERTY BY WILL.

In beneficiary's suit for specific performance of stepmother's oral agreement to leave plaintiff certain property she was to receive and did receive from plaintiff's father, admission of portions of latter's will as evidence of her agreement in accordance with plaintiff's claim, not being *res gestae* was error, since it was hearsay as to agreement of stepmother, adverse to her interests and no opportunity of cross-examination concerning them afforded defendant.

2. EVIDENCE—HEARSAY—CROSS-EXAMINATION.

Hearsay testimony is not admissible under any circumstances because the essential right of cross-examination is absent.

3. SAME—HEARSAY—FORMAL DOCUMENT.

The fact that the statement of a deceased person is contained in a formal document does not relieve it from the bar of the hearsay rule, unless the statement is against the interest of the deceased person.

4. SAME—CONTRACT TO LEAVE PROPERTY—STATEMENT BY PERSON NOT IN PRESENCE OF OBLIGOR—HEARSAY.

Any statement, oral or written, made by a husband not in the presence of his wife to the effect that she had agreed to leave certain property to his children by a former wife, would be hearsay.

5. SPECIFIC PERFORMANCE—ORAL CONTRACT TO LEAVE PROPERTY— EVIDENCE.

In suit for specific performance of stepmother's alleged oral agreement to leave plaintiff specific property which she had received from his father, record *held,* to justify finding of

REFERENCES FOR POINTS IN HEADNOTES
[1–5]  20 Am Jur, Evidence, §§ 450 *et seq.,* 556, 910.
[5]  57 Am Jur, Wills, § 185.

trial court that plaintiff had failed to prove the alleged contract.

Appeal from Barry; Cash (Paul R.), J., presiding. Submitted April 6, 1949. (Docket No. 25, Calendar No. 44,344.) Decided June 6, 1949.

Bill by Lawrence E. Colgrove against David S. Goodyear, individually and as executor of the estate of Carrie G. Colgrove, deceased, for specific performance of an alleged oral contract to make a will. Decree for defendant. Plaintiff appeals. Affirmed.

*Mitts & Smith,* for plaintiff.

*Butterfield, Amberg, Law & Buchen,* for defendant.

NORTH, J. After hearing on the merits in the circuit court in chancery the relief sought by the bill of complaint herein was denied and this appeal followed. Subsequently to the inception of the appeal, plaintiff, Lawrence E. Colgrove, died, but the suit was revived and the appeal is prosecuted by representatives of his estate. However, for convenience we shall refer to Lawrence E. Colgrove as plaintiff and appellant.

Claiming that his status is that of a third-party beneficiary, plaintiff brought this suit against defendant, David Goodyear, as executor named in the will of Carrie Colgrove, deceased, and as the beneficiary under her will who received the property involved herein. The relief sought is specific performance of an alleged oral contract to make by will a specific devise and bequest of certain real estate and personal property. The oral contract relied upon is alleged by plaintiff to have been made between plaintiff's father, Philip Colgrove, and Carrie Col-

grove, who was Philip's second wife; and in effect was that by her will Carrie should leave to Philip's 2 children the Colgrove home property and contents (with certain exceptions) which were given to Carrie by the will of Philip Colgrove. He was divorced from the wife of his first marriage in 1897, and remarried shortly thereafter. Plaintiff and his sister, Mabel Colgrove Ranney, were the children of the first marriage. Philip Colgrove died testate in 1930. His daughter Mabel died in 1937, leaving a surviving husband but no children. The death of Philip's second wife, Carrie Colgrove, occurred in 1947.

Philip Colgrove executed his last will and testament December 28, 1928, and by it made disposition of his estate evaluated somewhat in excess of $100,-000. This will, which was probated, provided for several bequests to others than members of testator's family. The testator bequeathed certain specified personal effects to plaintiff, and as the only other immediate provision for either of his 2 children he provided a bequest of $5,000 to each but only to be payable to the extent necessary to make that amount together with such insurance payments as either child might receive from life insurance carried by testator in which the children were beneficiaries. But, subject to intervening rights, the 2 children were to share equally with right of survivorship in the residue of testator's estate, which was made subject to payments of $250 per month out of income or principal to Carrie Colgrove during her lifetime, and also subject to payment during Carrie's lifetime of taxes, insurance, heating, et cetera, incident to the home property of testator. Plaintiff's sister Mabel predeceased Carrie Colgrove and in consequence plaintiff asserts the right to receive all of the residue of Philip Colgrove's estate, amounting, as inventoried, to nearly $22,000. In further disclosure of

the factual background of this litigation we quote paragraph 5 of Philip Colgrove's will:

"Fifth, To my wife, Carrie G. Colgrove, I give, devise and bequeath the home and four lots we now live upon at the corner of Green and Washington street, described as lots Nos. 836–837–867–868 of the city of Hastings, together with the contents of the home of every name, nature, kind and description, including my private library together with automobiles and other personal property. It being understood and agreed between my wife, Carrie G. Colgrove, and myself, that the home, in the event she survives me, is to remain undisturbed during her lifetime and that she is to have the absolute title to the property, and to sell or dispose of the home and lots, or any of them, and if she shall so desire to rebuild a smaller home on one of the back lots, but that at the death of my said wife, she has promised and agreed to carry out my wishes that the library shall be given to my daughter, Mabel C. Stebbins (Ranney) and my son Lawrence E. Colgrove, and all of the household goods except such goods and furnishings as came from her girlhood home shall be given in equal shares to my two children, Mabel C. Stebbins (Ranney) and Lawrence E. Colgrove; and that in the event she shall survive me that she shall make her will conveying to my two children the homestead and lots we now occupy and the personal property herein named.

"This latter clause is only explanatory and in no way to interfere with her title to the home, the real estate and the personal property in connection therewith, as I have implicit faith and confidence that in the event she survives me, her will will be made immediately in accordance with this understanding."

Carrie Colgrove, Harry Hayes and defendant Goodyear qualified and served as executors named in Philip Colgrove's will. When the estate was closed they were discharged, December, 1930; and as provided in a testamentary trust the portion of

Philip's estate not otherwise disposed of by his will was turned over to Hayes and Goodyear as trustees named in the will. Mr. Hayes died in 1935 and thereafter Goodyear served as sole trustee until the death in July, 1947, of Carrie Colgrove, who was the sole beneficiary under the trust. Carrie Colgrove disposed of 2 of the 4 lots which passed to her under the quoted fifth paragraph of her husband's will; but at the time of her demise she still owned the home property consisting of the other 2 lots and the dwelling thereon. This home property was of the inventoried value of $18,000.

After having made 3 previous wills, Carrie Colgrove in August, 1937, made a will which was admitted to probate. We quote it in part:

"SECOND: At the time of making this, may last will and testament, I have fully in mind the terms and provisions of the last will and testament of my late husband, Philip T. Colgrove. Since his death, however, there has been a definite change in circumstances, particularly relating to the value of property, brought about primarily as a result of the depression, for which reason I am not following exactly the wish expressed in his will, because I know that he did not anticipate the changed conditions and facts that now present themselves to me, and I make the provisions hereinafter set forth after careful consideration, with these thoughts in mind.

"THIRD: I give, devise and bequeath my home, together with all curtains, shades and draperies, located at the corner of Green and Washington streets in the city of Hastings, Michigan, comprising lots 867 and 868 of the original plat of said city, to David S. Goodyear (a second cousin of testatrix), to have and to hold forever.

"I have given the subject of this devise very careful thought and consideration, and by way of explanation I have in mind the changed conditions in real estate within the city of Hastings, the burden that

may result from the ownership of the home property in the way of taxes, maintenance and upkeep, and I therefore feel that the home on Green street should go to some one who can properly maintain it and live in the house as a home, and who will not find it too heavy a burden and responsibility. A further consideration in making this devise is the unfailing kindness and help at all times most willingly given me by David S. Goodyear, of whom I have always been very fond and for whom I have a very high regard."

Probate proceedings in Carrie Colgrove's estate were pending when the bill of complaint herein was filed, December 4, 1947. Validity of the above-mentioned wills is not challenged. Nor is the power of the court to grant relief of the character herein sought challenged, provided the right thereto is proven. The basic issue on this appeal is whether or not plaintiff proved by sufficient competent testimony that an oral contract, as claimed by plaintiff, was entered into between Philip Colgrove and his wife, Carrie Colgrove. The trial court found that plaintiff failed to prove the alleged oral contract and decreed dismissal of his bill of complaint.

We find it of first importance to determine whether statements in Philip Colgrove's will, upon which plaintiff relies very much, are competent as proof in support of plaintiff's case, as he asserts; or are they hearsay and incompetent, as defendant contends? In substance these statements or recitals in the will are as follows:

"It being understood and agreed between my wife, Carrie G. Colgrove, and myself, that the home, in the event she survives me, is to remain undisturbed during her lifetime and that she is to have the absolute title to the property,   *   *   *   but that at the death of my said wife, she has promised and agreed to carry out my wishes that (testator's library and

household furnishings) * * * shall be given in equal shares to my two children, Mabel C. Stebbins (Ranney) and Lawrence E. Colgrove; and that in the event she shall survive me that she shall make her will conveying to my two children the homestead and lots we now occupy and the personal property herein named. * * *

"I have implicit faith and confidence that in the event she survives me, her will will be made immediately in accordance with this understanding."

When plaintiff offered in evidence the will of Philip Colgrove, defendant objected as follows—"to its materiality and relevancy, and also to its competency in connection with the claim of the plaintiff in this case, it being a self-serving statement therein, not under any exception to the hearsay rule, and therefore to be excluded under the hearsay rule, where there is some mention of an alleged agreement between Mr. Colgrove and his wife." The trial court received the will in evidence over defendant's objection. In our judgment this ruling of the trial court was erroneous. The issue submitted for determination was not what testamentary disposition Philip Colgrove desired or sought to make of his estate. Instead the controlling issue was: Did testator and his wife enter into the alleged agreement? As to that issue the recitals above noted were clearly hearsay and defendant was afforded no opportunity of cross-examination concerning them. They were not recitals adverse to the interests of the testator. Instead these statements in Philip Colgrove's will were adverse to the interests of Carrie Colgrove, who under Philip's will became the absolute owner of the property in suit, and who was the opposite party to the claimed agreement. Even if it were to be assumed, as plaintiff asserts in his brief, that the noted statements in Philip Colgrove's will were not self-

serving, nonetheless as to the controlling issue in this case they were hearsay.

"Theory of the hearsay rule. The fundamental test, shown by experience to be invaluable, is the test of *cross-examination.* \* \* \* It is here sufficient to note that the hearsay rule, as accepted in our law, signifies *a rule rejecting assertions, offered testimonially, which have not been in some way subjected to the test of cross-examination.*" 5 Wigmore on Evidence (3d ed), § 1362.

"Hearsay testimony is not admissible under any circumstances because the essential right of cross-examination is absent." *People* v. *Chambers,* 279 Mich 73, 78.

The fact that the statement of a deceased person is contained in a formal document does not relieve it from the bar of the hearsay rule, unless the statement is against the interest of the deceased person. Such in principle is the holding in *Re Corby's Estate,* 231 Mich 235. While the issue therein was notably dissimilar from that in the instant case, in *Wolf* v. *Troxell Estate,* 94 Mich 573, it was held that the will of the deceased against whose estate the suit was brought "should not have been admitted" in evidence for the purpose of disclosing the character of a son of deceased, which was sought to be shown in support of the defense relied upon.

Numerous decisions of this Court are in accord with the foregoing. Among them *Collins* v. *Shaw,* 124 Mich 474; *Boyle* v. *Waters,* 206 Mich 515; *Sweeney* v. *Jordan,* 223 Mich 196.

In support of plaintiff's contention that the recitals in Philip Colgrove's will are not inadmissible as hearsay, the following cases are cited in plaintiff's brief. *Van Fleet* v. *Van Fleet,* 50 Mich 1; *Thomas* v. *Hens,* 224 App Div 252 (229 NYS 725); *Golland* v. *Golland,* 84 Misc 299 (147 NYS 263);

*Rudd* v. *Gates,* 191 Ky 456 (230 SW 906). A reading of these cases discloses that the court did not in any of them pass upon the question just above considered. The question was not raised as to whether certain testimony received in the respective cited cases was so received in violation of the hearsay rule. And to the same point plaintiff also cites *Bond* v. *McMahon,* 94 Mich 557; *Rogers* v. *Krumrei,* 143 Mich 15; *In re Dowell's Estate,* 152 Mich 194. In each of these cases certain testimony was held admissible as being part of the *res gestae;* but in the instant case it cannot be said under the record before us that the alleged agreement upon which plaintiff relies was *res gestae* of the making of Philip's will, the contents of which so far as shown by the record were not known to Carrie Colgrove prior to the death of her husband.

From other jurisdictions plaintiff cites *Vance* v. *Park,* 15 Ohio CC 713; *Fickes's Estate,* 59 Pa Super 535; *Russell* v. *Jones* (CCA 5th circuit), 68 CCA 487 (135 Fed 929). But in each of these 3 cases the promisor as well as the promisee was present at the time the latter made the will, at which time the collateral agreement was also entered into. Under such circumstances it might well be held that what was said or embodied in the will was part of the *res gestae* of the whole transaction, and therefore admissible in evidence. But, as just above noted, the facts in the instant case are materially different in that, so far as the record discloses, Carrie Colgrove was not present at the making of Philip's will nor did she have knowledge of its context prior to his demise.

As noted earlier herein, this is a suit for specific performance of an alleged oral contract claimed by plaintiff to have been entered into between Philip Colgrove and his wife. As to the controlling issue, it seems almost too clear for argument that any statement, oral or written, made by Philip Colgrove

not in the presence of his wife, to the effect that such a contract was consummated between them, would be hearsay. The obvious purpose of such testimony would be to establish a contract which would restrict the rights which the wife, in the absence of a contract to the contrary, would possess relative to making such testamentary disposition of the property as she saw fit. It follows that any statement of this character by Philip Colgrove would be adverse to the rights of Carrie Colgrove and, also, to the rights of the defendant herein, who claims the property in suit under the provisions of the will of Carrie Colgrove, deceased.

If, on our hearing *de novo* of this case, the quoted statements in Philip Colgrove's will are excluded as being incompetent, as we think they must be, then comes the question as to whether plaintiff has made a case by other testimony.

Nothing in the will of Carrie Colgrove, from which we have hereinbefore quoted the material portion, in any persuasive degree tends to prove the alleged contract. In stead in her will the reference is merely to "the wish expressed in his (Philip's) will." The inferences which appellant seeks to draw from attendant circumstances, which inferences may or may not be accurate and justifiable, surely afford little, if any, proof of the contract which plaintiff seeks to have specifically performed. A careful review of all the testimony on which plaintiff relies fails in our minds to adequately prove the alleged contract. In so stating we have not overlooked the testimony of plaintiff's wife, upon the competency of which we deem it unnecessary to pass. The most pertinent testimony given by plaintiff's wife was: "I heard Mrs. Colgrove tell Lawrence, my husband, that he had nothing to worry about, that she had drawn her will in accordance with his father's wishes." This testimony referred to a prior will of Carrie Col-

grove, made in March, 1930, shortly after her husband's demise, and which was withdrawn from the custody of the probate court in 1935, obviously for cancellation. But at most this testimony is to the effect that Carrie Colgrove had "drawn her (earlier) will in accordance with his (Philip Colgrove's) * * * *wishes.*" It made no reference to a contract or agreement in compliance with which that earlier will was drawn, and the exact provisions of that will were not disclosed in this case. We quite agree with the circuit judge that this testimony of plaintiff's wife, if admissible, had "very little weight (if any) in proving the alleged agreement to execute a will on the part of Carrie G. Colgrove."

Our review of this record brings the conclusion that the trial court made the proper disposition of this case, on the ground that plaintiff failed to prove the alleged contract between Philip Colgrove and Carrie Colgrove of which plaintiff sought specific performance. The decree entered in the circuit court is affirmed, with costs to appellee.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, DETHMERS, BUTZEL, and CARR, JJ., concurred.