## KIEFFER *v.* VAN LEEUWEN.

1. SPECIFIC PERFORMANCE—ORAL CONTRACT TO LEAVE PROPERTY— EVIDENCE.

Evidence in suit for specific performance of alleged oral contract by deceased to leave all of her real and personal property to plaintiff, deceased's sister, if plaintiff would come live with and take care of her *held,* sufficient to establish contract as alleged, a fee title to the real estate being created by the oral agreement to give everything that the decedent owned, it also appearing that plaintiff disposed of her own property and came to live with and care for the deceased.

2. SAME—ORAL CONTRACT TO LEAVE PROPERTY—EVIDENCE—HEARSAY —SELF-SERVING STATEMENTS.

It was error for trial court to admit into evidence in suit for specific performance of alleged oral contract of deceased to leave all of her real and personal property to plaintiff sister, in return for which the latter came and cared for deceased, the latter's wills making other dispositions of her property, since such wills were self-serving and hearsay and afforded plaintiff no opportunity for cross-examination.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 5] 49 Am Jur, Specific Performance § 21.
[4] 20 Am Jur, Evidence § 268.
[6] 19 Am Jur, Equity § 404.

3. CONTRACTS—UNILATERAL, SELF-SERVING ACTION.

Unilateral self-serving action by the obligor under a contract may not avoid the binding effect of such contract.

4. EVIDENCE—ACTS—WITNESSES' TESTIMONY AS TO STATEMENTS—ADMISSIBILITY.

Generally, acts of contracting parties loom large as compared with what witnesses say the parties said, but a court or a jury may consider only those acts which are admissible in evidence.

5. SPECIFIC PERFORMANCE—ORAL CONTRACTS—EQUITY.

The nature of equity practice requires that the chancellor's powers in the matter of doing equity, although broad, are not without limits, and where it involves the specific performance of an alleged oral contract and the terms of such contract are established, it must be enforced according to its terms.

6. EQUITY—JURY.

A jury in chancery is merely advisory and the chancellor may accept or reject its findings as he sees fit.

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted January 6, 1959. (Docket No. 3, Calendar No. 47,443.) Decided February 19, 1959.

Bill by Mina Kieffer against W. Harold Van Leeuwen, individually and as executor of the estate of Anna Gelock Leusenkamp, deceased, Robert J. Van Leeuwen and Julia Keller for specific performance of oral agreement to leave property to her. Special jury verdict establishing agreement. Decree for plaintiff giving partial relief. Plaintiff appeals. Decree vacated and cause remanded for entry of decree granting full relief.

*Frank J. Powers* and *John P. Milanowski,* for plaintiff.

*Luyendyk, Hainer, Hillman, Karr & Dutcher,* for defendants.

VOELKER, J. This is an action by Mina Kieffer, plaintiff-appellant, against W. Harold Van Leeuwen, individually and as executor of the estate of Anna Gelock Leusenkamp, deceased, and Robert J. Van Leeuwen and Julia Keller for specific performance of an alleged oral contract between appellant and her deceased sister, Anna G. Leusenkamp. Plaintiff Mina claims that she and her sister Anna, both elderly persons, agreed that if plaintiff went to live with and care for sickly Anna for the rest of her life that when Anna died Mina would get all her property, including her home at 707 Fuller avenue, S.E., in the city of Grand Rapids. Her bill of complaint set up this claim in appropriate legal language.

The case, although in chancery, was upon plaintiff's motion tried before a jury in accordance with the statutory provision therefor. (CL 1948, § 618.21 [Stat Ann § 27.1001].) The lawyers for all parties concerned agreed to submit to the jury the following question, which it answered in the affirmative:

"Did the deceased make an offer to the plaintiff that if plaintiff would come and live with her that she in turn would provide that the property at 707 Fuller become the property of the plaintiff as claimed by the plaintiff, and did the plaintiff accept the offer, and has she fulfilled the agreement that she made with her sister?"

At the conclusion of the hearing the chancellor only partially accepted the jury's answer to the above question, and instead directed that a decree be prepared providing that while the plaintiff should receive all of the decedent's personal property absolutely, that she be granted but a life estate in the real estate. This decree, as prepared, further provided that an injunction the court had granted upon the filing of plaintiff's bill (which enjoined defend-

ant executor from proceeding with the administration of the estate) be set aside.

Plaintiff objected to the proposed decree and submitted one of her own by which she would have received absolute ownership of all of her sister's property, including a fee interest in the real estate, the injunction would have been continued, and she would have been granted costs.  Upon rejection by the court of her proposed decree and entry of the other, plaintiff moved that a rehearing be granted.  From the order denying her motion for rehearing and the entry of the decree, prepared in accordance with the court's opinion, plaintiff has appealed.

The first question to be determined is: was there a contract?  On that point the court agreed with the jury finding that there was a contract, saying in its opinion:

"The court agrees with the finding of the jury to the extent that the deceased agreed to make provision for the plaintiff in relation to the property in question."

Defendants-appellees admit a contract in their brief, saying:

"It has been established, both by the verdict of the jury and by the findings of fact and judgment of the court, that a contract was entered into which required that decedent, in some manner, transfer certain real estate to plaintiff-appellant.  Defendants-appellees have not raised the question of the correctness of the verdict and judgment by cross appeal."

The main dispute below and here is what the terms of that contract were.  At the hearing below plaintiff called 3 witnesses who testified as follows:

Witness Edith Larr said:

"And she [decedent] said, 'Well, if she would only give up her work and come and live with me, my

house and lot and all that I have, I prom—' she says, 'I have promised that I will give her my house and lot, and what I have when I die will be hers.' * * *

"And she said she promised to give Mina the house and lot if she would come and live with her, and I said, 'Do you have that in writing?' and she says, 'I don't but I will have it.' "

Witness Howard Hollowell said:

"She [decedent] said, 'My sister is here with me.' She said, 'I am in such poor physical condition for it to be kinda dangerous for me.' I had spoken to her several times, shouldn't she have somebody with her. She said, 'She had less than any of the rest of them to give up, and so she disposed of what she had, and she is going to live here with me, and in case of the worst come, well, the place will be hers.' "

Witness William Gelock said:

"A. She [decedent] told me in the case of her death all her property, her house and lot and all her belongings went to Mina.

"Q. Did she tell you that on different occasions?
"A. Yes.
"Q. Did she tell you that more than once?
"A. Two or 3 times, I think."

In the absence of persuasive evidence to the contrary we think the foregoing was sufficient to establish both the existence of a contract and the terms thereof as alleged in the bill of complaint. That the words employed here are sufficient to create a fee interest, see *Betterly* v. *Granger*, 350 Mich. 651, where Mr. Justice SMITH wrote to the effect that a fee was created by an oral agreement to give "everything" that the decedent owned.

We now turn to the "evidence to the contrary" presented by the defendants. The only evidence in the record that might conflict with plaintiff's proofs are 2 wills allegedly executed by the decedent, one

made before the contract and the other made after, shortly before Anna's death, both indicating other disposition of her property. The court admitted these wills into evidence over plaintiff's objection and seems to have relied quite heavily on one or both in its opinion and in reaching the result it reached. Thus we must decide whether the wills were properly admitted into evidence. Plaintiff claims that the wills are hearsay and thus inadmissible and cites us to *Colgrove* v. *Goodyear,* 325 Mich 127, 133 (10 ALR2d 1029), where we said:

"The issue submitted for determination was not what testamentary disposition Philip Colgrove desired or sought to make of his estate. Instead the controlling issue was: Did testator and his wife enter into the alleged agreement? As to that issue the recitals above noted [portions of decedent's will] were clearly hearsay and defendant was afforded no opportunity of cross-examination concerning them."

A similar situation is presented by the instant case. The only questions before the chancellor here were: Was there a contract? If so, what were its terms? As to those issues any will, even if proven to have been properly executed—and the wills here involved were not so proven—would at best be self-serving hearsay.

Further quotation from the *Colgrove Case* would serve only to lengthen this opinion unnecessarily. Suffice it to say that the *Colgrove* opinion written by Justice NORTH contains a complete and careful explanation of why a will is considered hearsay in a situation similar to the one here presented.

The wills thus being inadmissible because of the rule against hearsay, it follows that the trial court erred in relying thereon to determine the terms of the admitted contract between plaintiff and her deceased sister. To allow the wills to control or affect the outcome of this case was to allow the estate to do

that which the decedent herself could not have done, that is, avoid a binding contract by prior or subsequent unilateral self-serving action by a party to that contract.

The court below relied upon the following quotation from *Paris* v. *Scott,* 267 Mich 400, 404, to explain its action:

"Where the alleged contracting parties cannot testify, their acts loom large as compared with what witnesses say they said."

The judge on his own explained further:

"In determining just what that contract was, resort must be had to the acts of the parties."

The learned court was quite correct in its general statement of the law, but in applying it to the case at hand we are afraid it momentarily overlooked that the court as well as the jury may look at and rely upon only those acts which are properly admissible in evidence. It seems apparent that the learned chancellor was trying to do equity by reaching what he thought was a fair compromise between the 2 conflicting claims. The very nature of equity requires that the chancellor's powers in that regard be broad and sweeping. For that reason, among others, a jury in chancery is merely advisory and the chancellor may accept or reject its findings as he sees fit. See *White* v. *Burkhardt,* 338 Mich 235. However broad, the chancellor's powers are not without limits in his proper efforts to reach a fair result. See *McLean* v. *Wortman,* 353 Mich 458.

In a suit for specific performance, once the chancellor finds that a contract exists and decides to enforce it, he must do so according to the terms thereof. As the chancellor correctly stated in his opinion:

"The court may not make a new contract for the parties, but must enforce the contract according to its terms if at all. *Henry* v. *Rouse,* 345 Mich 86."

If the chancellor properly found from the proofs that the plaintiff was not entitled to the fee of the real estate, then we are at loss to understand how she became entitled to the "fee" of the personal property. Conversely, if he was correct in awarding plaintiff all of the personal property, then we are again at loss to understand why she would not be entitled to the fee of the real estate. In situations of this kind, perhaps regrettably, there is no room for compromise, however "fair" it may appear. Plaintiff here was entitled to all or nothing, there was no middle ground. We think the undisputed proofs show that she was entitled to all.

The decree of the superior court is accordingly vacated and set aside and the cause remanded to that court so that it may enter an appropriate decree not inconsistent with this opinion. Costs to appellant.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred.