576 A.2d 985

**JOSEPH D. SHEIN, P.C., Appellant,**

v.

**Richard P. MYERS, Alan I. Reich, Robert E. Paul, and Paul, Reich & Myers.**

Superior Court of Pennsylvania.

Argued Jan. 19, 1990.

Filed May 23, 1990.

Reargument Denied July 26, 1990.

Thomas F. Johnson, Philadelphia, for appellant.

Ben W. Joseph, Philadelphia, for appellees.

Before OLSZEWSKI, KELLY and JOHNSON, JJ.

JOHNSON, Judge:

This appeal addresses whether the court sitting in equity correctly resolved a dispute over damages resulting when three attorneys left the practice with which they had been associated, Joseph D. Shein, P.C. (Shein). When leaving the Shein firm and establishing their own firm, Richard P. Myers, Alan I. Reich and Robert E. Paul (the breakaway attorneys) committed acts found by the court to be tortious interference with the contracts between the Shein firm and its clients. The court's remedy included a court-supervised attorney re-selection process for the clients. However, the court did not award damages to Shein.

The question presented for our decision is whether, once having found that the breakaway attorneys tortiously interfered with the contracts between Shein and his clients, the trial court may decide that tortious conduct was cured, and damages consequently obviated, by the court-designed attorney re-selection process. We conclude that established law mandates that, once a finding of tortious interference has been made, the tortfeasors must pay damages. Hence, we reverse the trial court's order and remand to allow the trial court to calculate and to award damages to Shein.

The facts underlying this appeal are as follows. The Shein firm specializes in personal injury and asbestos litigation. Paul joined the Shein firm in 1980, Reich in 1982 and

Myers in 1984. Each had little or no experience in these areas when he joined the firm. Each signed an employment contract providing that he would receive fifty percent of the net fee earned from clients he referred to the firm. From late 1984 through early fall of 1985, the breakaway attorneys engaged in partnership negotiations with Shein. By early fall, 1985, the breakaway attorneys decided not to become partners in the Shein organization. Unbeknown to Shein, they arranged financing with a bank and rented office space in preparation for opening their own firm.

At 6:00 a.m. on Sunday, October 13, 1985, the breakaway attorneys, without Shein's permission or knowledge, arrived at Shein's offices with a rental truck, entered the offices and removed approximately 400 case files. They transported the files to their new offices. On October 13 and 14, 1989 the breakaway attorneys contacted many of Shein's clients by telephone, asking them to leave the Shein firm and to become clients of their new firm. In some cases, the attorneys said that they would charge lower fees than their former employer. The breakaway attorneys also wrote to some of the clients announcing that they had left the Shein firm and that they had formed a new practice. Enclosed were contingent fee agreements, powers of attorney and discharge forms to be used to inform Shein that he was discharged and to request that the clients' files be forwarded to the breakaway attorneys.

On October 14, 1985 an emergency judge enjoined the breakaway attorneys from contacting Shein's clients and ordered the breakaway attorneys to return the case files. On November 9, 1985 the trial court entered a final decree finding tortious interference with contract and granting injunctive relief to Shein. The trial court contacted those clients who had discharged Shein, informing them that their initial, tainted selection had been vacated and asking them to re-select their attorney.

Shein subsequently filed a supplemental complaint requesting damages resulting from the tortious interference with contract. The trial court decided that Shein

suffered no loss because the clients' decisions to discharge Shein were ultimately voluntary. Thus, the court did not grant compensatory damages. The court did, however, by Order of May 18, 1989 award punitive damages for wrongful removal of files from Shein's office in the amount of $10,000.00 against each of the three breakaway attorneys. The breakaway attorneys never challenged this award. The court also awarded counsel fees and costs with regard to the removal of the files. The court then established an equitable procedure for dividing the fees in the disputed cases and appointed a master to collect evidence and make recommendations for further division of fees. The order provided:

. . . .

(i) *REFERRAL FEES.* In each case referred to plaintiff by or through any of the defendants, defendants shall be entitled to one-third of the fee for origination of the case. In each case which was not referred to plaintiff by or through any of the defendants, plaintiff shall be entitled to one-third of the fee for origination of the case. In each case where the matter was referred by any other attorney other than one employed by plaintiff or defendants, whether referred through plaintiff or defendants, the origination fee shall be reduced by the payment of the outside referral attorney's fee.

(ii) *BALANCE OF FEES.* The fee balance which is left in each case after allocation of the referral fee shall be distributed as follows:

(A) In each case in which the client did or does not elect to have the defendants as counsel, the plaintiff shall be entitled to the full fee balance.

(B) In each case in which the client has or will elect to have defendants as counsel, the court shall determine the distribution of the fee balance after submission of a written recommendation by the Master pursuant to paragraph 3.

Order of May 18, 1987. "Paragraph 3" directs the master to determine the contributions of each party according to the principles of quantum meruit. By order of May 25, 1987, this Court permitted Shein to bring this interlocutory appeal. By order of August 21, 1987 the trial court denied motions for post-trial relief. It also incorporated by reference the May 18, 1987 order as a final order. Shein appeals from the August 21, 1987 order. Shein challenges the court's refusal to award compensatory damages, alleges that the court erred in disregarding the employment contracts which gave the breakaway attorneys one-half of net fees as referral fees and questions the court's authority to appoint a master in this equitable action. Finding merit in all these arguments, we vacate the trial court's order and remand.

We reject the conclusion of the distinguished chancellor, the Honorable Abraham J. Gafni, that the court-imposed attorney re-selection process expunges the liability of the breakaway attorneys. Judge Gafni found that the breakaway attorneys' conduct constituted tortious interference with contract. Under *Richette v. Solomon,* 410 Pa. 6, 187 A.2d 910 (1963), damages must be imposed once this finding is made. We find no authority to support Judge Gafni's position that this liability may be supplanted by a cure of a collateral problem, the climate in which clients made their subsequent attorney selection. In so doing, Judge Gafni mislabels the clients as the damaged parties, misdefines the damage as that done to the clients' free exercise of choice rather than as damage done to Shein's practice and denies Shein the damages to which he is clearly entitled.

■ Appellate review of equity matters is limited to a determination of whether the chancellor committed an error of law or abused his discretion; our scope of review of a decree in equity is limited and the decree will not be disturbed unless it is unsupported by the evidence or demonstrably capricious. *Lower Frederick Township v. Clemmer,* 518 Pa. 313, 543 A.2d 502 (1988). We conclude that the chancellor committed an error of law and thus has

abused his discretion by failing to impose liability upon the breakaway attorneys once he found tortious interference. Both the law of this Commonwealth and common sense refute Judge Gafni's conclusion that the attorney re-selection remedy could negate the breakaway attorneys' liability to Shein for his damages, loss of fees.

While it was within the chancellor's equitable powers to recognize the clients' needs and to implement the attorney re-selection process, this cannot expunge the breakaway attorneys' established wrong. A chancellor sitting in equity may fashion a remedy in his discretion to compensate a party coming before him, but the remedy must be directed within the channels of precedent. *Peoples–Pittsburgh Trust Company v. Blickle,* 330 Pa. 398, 199 A. 213 (1938); *County of Allegheny v. Commonwealth,* 85 Pa.Commw. 73, 480 A.2d 1330 (1984), *vacated on other grounds,* 507 Pa. 360, 490 A.2d 402 (1985).

Neither party disputes the court's finding of tortious interference. Pennsylvania courts employ the Restatement definition of the tort of tortious interference:

Intentional Interference with Performance of Contract by Third Person

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other *from the third person's failure to perform the contract.*

*Adler, Barish, Daniels, Levin and Creskoff v. Epstein,* 482 Pa. 416, 431, 393 A.2d 1175, 1183 (1978), *cert. denied* 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979), *quoting* Section 766 of the Restatement (Second) of Torts (Tent. Draft No. 23, 1977) (emphasis supplied). The tort has three elements: 1) intentional action 2) that is improper and 3) that results in the interference of the performance of a contract with another. The *Richette v. Solomon* court

articulated the nature of this tort in the context of lawyer-client contracts:

> The relationship between a lawyer and his client is a serious, vital and solemn one. No third person may interfere with the relationship any more than he may with propriety intervene between a doctor and his patient. A claimant or patient may, of course, disengage himself from a professional relationship provided he has met all obligations owing to his legal or medical counsellor, but if that disassociation is the result of coercion or misrepresentation practiced by others, the intervenors are answerable in law as anyone else would be liable for causing the rupture of a binding contract.

*Richette v. Solomon*, 410 Pa. at 8–9, 187 A.2d at 912.

In *Richette*, a union member hired an attorney to bring a personal injury action against his employer. Union officials induced him to break the contract with the attorney. The attorney then brought an action against the union officials for tortious interference with contract. He asked for damages in the amount he would have received had the case been tried under the tortiously broken contingent fee contract as well as for punitive damages. A jury returned a verdict in favor of the attorney and awarded him compensatory damages in an amount equivalent to what his fee would have been under the contingent fee contract. The supreme court, upholding the compensatory damage award (and reducing the punitive damage award), concluded that the jury was warranted in finding tortious interference. Once the court arrived at this conclusion, the only question was whether the amount of the damage award was justified by the evidence; the court concluded that it was.

In the present case, that the breakaway attorneys' acts were intentional and that those acts resulted in interference with performance of contracts was not at issue. Judge Gafni had only to determine whether the conduct was improper. Before the attorneys left Shein's firm they were associates, a relationship from which they greatly benefitted. They handled many of the cases at issue and were

well compensated for their work, with regular increases bringing their annual compensation from $25,000 to $125,-000 for Paul, $37,500 to $125,000 for Reich and $55,000 to $100,000 for Myers. The referral fees pursuant to the attorneys' individual employment contracts with Shein supplemented this compensation. It was by virtue of their former positions as salaried associates of Shein that they had contact with the clients and were able to exploit this relationship and to induce them to break contracts with Shein.

Judge Gafni found that the following acts constituted tortious interference by the breakaway attorneys that prevented performance of the Shein firm's contracts with its clients: surreptitious removal of four hundred files from Shein's offices, scurrilous statements about the Shein firm and misleading letters to clients accompanied by forms to be used by clients to discharge the Shein firm. This finding of liability is supported by the finding of liability in *Adler, Barish,* the facts of which are substantially similar to those in the present case. The supreme court there determined that the injunctive relief imposed by the trial court was proper because the challenged conduct amounted to tortious interference. The breakaway attorneys here do not challenge Judge Gafni's finding of tortious interference. The only issue, as raised by appellant Shein, is whether the court erred in failing to impose liability once this finding had been made.

Even if the voluntariness of clients' choices were the dispositive issue in this case, there is no evidence of record to support a conclusion that the court's remedy cured the taint in the clients' minds caused by the breakaway attorneys' improper contacts. Following the remedy's implementation, no hearings were held to determine the remedy's effectiveness. The court simply assumed that its remedy worked. Given the reality that one cannot wipe a thought from a person's mind, it would be just as reasonable to reach the opposite conclusion.

Having decided that the breakaway attorneys' behavior met the legal test and constituted tortious interference, Judge Gafni is required to recognize and to carry out the legal effect of this decision, that "one who intentionally and improperly interferes with the performance of a contract ... between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the third person's failure to perform the contract." Restatement (Second) of Torts, § 766. In this case, the liability was for loss of fees. Judge Gafni found the breakaway attorneys to be tortfeasors. No authority allows the court to disregard this finding. The allocation of fees on a quantum meruit basis, a remedy for a situation in which there has been no wrongdoing and thus no damages, see Dorsett v. Hughes, 353 Pa.Super. 129, 509 A.2d 369 (1986), as is not so in the present case, was error.

We hold that, pursuant to established tort principles and to Richette, Shein must be awarded a money judgment reasonably equivalent to the anticipated revenue protected from outside interference that he would have received pursuant to the contracts had the cases remained in his firm. To so value the cases is not mere speculation; see Richette. For cases originally referred to the Shein firm by one of the breakaway attorneys, the money judgment should be half of what Shein's reasonable expectation would be; this comports with the employment agreements granting the breakaway attorneys half of these fees as a referral fee. Hence, we reverse the order of August 21, 1987 and remand for the court to determine the amount of and to award damages.

Next, we address Shein's contention that the trial court erred in failing to enforce the provisions of the parties' employment agreements that, in cases referred to the Shein firm through any of the breakaway attorneys, the fees realized would be equally divided between the firm and the party through whom the case was referred. The trial court incorrectly concluded that, because employment was

terminated, the contract provision was no longer binding. This fee is compensation for referral, an act which was completed before the termination of the employer-employee relationship. The court had no grounds for modifying or abrogating this contract term, and the breakaway attorneys had fully performed. Of course, Shein is bound by this contract term as well as are the breakaway attorneys. Therefore, the breakaway attorneys are entitled to one-half of an amount equivalent to fees generated by those cases which they referred to the Shein firm.

■■ Last, we agree with Shein that the court erred in appointing a master in this equity case. The rules governing actions in equity provide:

### EXAMINERS, MASTERS AND AUDITORS

Except as otherwise provided by Act of Assembly or rule of the Supreme Court, no examiner, master or auditor shall be appointed. Pa.R.C.P. 1514. It is the nature of the tasks to be performed, and not the title of the person who is to assist the court that determines whether this rule has been violated. *Jackson v. Hendrick*, 457 Pa. 405, 321 A.2d 603 (1974). In the present case, the master was authorized to receive evidence, briefs, arguments and other information. On the basis of this evidence he was directed to submit a written report recommending allocation of referral fees, fee balances, costs and interest on a case-by-case basis. This is precisely the type of judicial function precluded a master by Pa.R.C.P. 1514. *Arcadia Theatre Co. v. Sablosky*, 418 Pa. 34, 209 A.2d 375 (1965). Accordingly, we reverse the appointing of a master.

Order reversed. Case remanded. Jurisdiction is relinquished.

KELLY, J., joins and files a concurring statement.

OLSZEWSKI, J., files a concurring and dissenting opinion.

OLSZEWSKI, Judge, concurring and dissenting.

We agree with the majority that the trial court did not have the authority to disregard the contract term regarding referral fees. We further agree that the trial court overstepped its authority in appointing a master. Nevertheless, we must respectfully dissent from the reversal of the trial court's order regarding division of the fee balance. We agree with the trial court that a plaintiff suffers no compensable harm when clients discharge him by voluntary choice.

We agree with the statement of facts as presented by the majority; however, we wish to emphasize certain facts that were not presented by the majority. First, we note that immediately after the tortious conduct occurred, the Shein firm sent a "newsletter" to its clients telling them about the breakaway attorneys' tortious acts. The letter said:

On another subject, this past Sunday we were shocked to discover that at 6:17 a.m. Robert E. Paul and at least one other person entered our offices and proceeded to improperly remove some case files and other legal documents, all of which are the property of this firm. Upon being observed, they departed out the back door with those files already packed, leaving others scattered about our offices.

When I questioned these unusual acts later that day he admitted to me that he had done so and that he and two other lawyers formerly of this firm were forming their own firm and intended to keep our files.

As a result, we filed an action against those three individuals in the Philadelphia Court of Common Pleas and a Preliminary Injunction has been issued requiring them to return all case files and property of this firm and prohibiting them at this time from representing or accepting the representation of any of our clients whom they have solicited.

Our firm is totally familiar with all aspects of your cases. All cases will continue to be handled by our eight

lawyers and nine paralegals all of whom are experienced in asbestos litigation.

*See* Defendant's Exhibit # 2, letter dated October 15, 1985.

After finding tortious interference with contract, the trial court also sent a letter to the affected clients. The court's letter said:

Dear Client:

As you may be aware, Robert Paul, Alan Reich and Richard Myers have withdrawn from the law firm of Joseph D. Shein, P.C. to set up their own firm under the name of Paul, Reich and Myers. As a client you have a right to choose who will be your lawyer and represent you on your case. You can choose either firm. The purpose of this letter is to give you an opportunity to decide who you want to have as your lawyer and to tell the Court so that the Court can see that your wishes are carried out.

In order to tell the Court what you have decided, please fill out the enclosed form, and return it to me as soon as you have decided. This form must be completed and returned to me even if you have already signed another form within the past few weeks, as those forms are not binding and only the enclosed form will be considered by the Court. I urge you to consider this matter carefully, but not to delay in returning the form to me after your decision is made as this will assure that your case proceeds without delay.

I have ordered that neither firm should discuss the question of your choice of an attorney with you until you send back the enclosed selection form. As soon as I receive your selection, I will direct that the lawyers whom you have chosen contact you.

Letter dated November 11, 1985.

In March 1986, the Shein firm filed a supplemental complaint requesting monetary damages. Judge Gafni found that the clients' discharge of the Shein firm was not caused by the tortious interference with contract. Findings of fact at 22. The trial court found that the Shein firm's newslet-

ter and the court's prompt actions removed any taint upon the attorney selection process. Findings of fact at 23. The clients' ultimate choice of attorney was voluntary; consequently, the trial court decided to divide fees on a *quantum meruit* basis, as it would have done in the absence of tortious interference. *See, e.g., Dorsett v. Hughes*, 353 Pa.Super. 129, 509 A.2d 369 (1986). This appeal followed.

We believe that Judge Gafni's acted within the scope of his discretion in fashioning a solution to this difficult problem. The newsletter and the court's actions broke the causal link between the tortious act and the choice of attorney. The Shein firm's loss of business was not a result of the tortious act; rather, it was a result of the clients' voluntary decision to hire the breakaway attorneys. Under these circumstances, the trial court properly applied *Dorsett v. Hughes*, 353 Pa.Super. 129, 509 A.2d 369 (1986), and divided the fees on a *quantum meruit* basis. The trial court merely attempted to restore the position of the parties but for the tortious conduct of the appellees.

Judge Gafni did not "mislabel[ ] the clients as the damaged parties [and] misdefine[ ] the damage as that done to the clients' free exercise of choice." *See,* majority opinion at 5. He merely concluded that the Shein firm incurred no monetary loss as a result of the tortious interference in this case.

The majority's reliance on *Richette v. Solomon*, 410 Pa. 6, 187 A.2d 910 (1963), is misplaced. In *Richette,* a client discharged his attorney solely because of pressure from his union. The client would not have terminated the contract in the absence of the tortious conduct. Thus, the tortious conduct caused the attorney's loss of fees, and the attorney was entitled to compensation.

The present case is clearly distinguishable. According to the trial court, if appellees had left the Shein firm without committing any tortious act, the clients still would have discharged the Shein firm and engaged the new firm. The

tortious conduct did not cause the loss of fees, so the Shein firm has incurred no compensable harm.

The majority points out that "there is no evidence of record to support a conclusion that the court's remedy cured the taint in the clients' minds." Majority at 557. The majority seems to suggest that the trial court should have held hearings, *sua sponte,* to determine the effectiveness of its injunctive relief. We are unaware of any authority for this novel proposition.

In addition, the majority places the burden on the wrong party. As plaintiff below, the Shein firm had the burden of proving causation. If no evidence was presented to show that the tortious acts caused the clients to discharge the Shein firm, then the Shein firm failed to meet its burden of proof. The Shein firm cannot prevail now by complaining that the evidence it presented was insufficient.

Furthermore, as the Shein firm's attorney noted at trial, a factual inquiry at this time could not prove or disprove the voluntariness of the clients' choice. N.T., 9/16/86 at 49. It would be unrealistic to try to prove through factual inquiry the causes which impelled the clients to make decisions more than a year ago.

The trial court was in the best position to determine whether the choice was voluntary. Judge Gafni has presided over the proceedings in this case since February 1986. He has heard testimony from many of the clients in various hearings, and he has had contact with them through the attorney selection process. Judge Gafni did not merely "assume that [his] remedy worked." Majority at 557. He made a reasoned decision based on his extensive experience with this case. We see no reason to interfere with that decision.

In summary, we would find that the breakaway attorneys are entitled to one-half of the net fee in all cases that they initiated, which is the referral fee provided in the employment contract. We would divide the remaining half on a

*quantum meruit* basis. In cases not initiated by the breakaway attorneys, we would divide the entire fee on a *quantum meruit* basis, taking into account the value of the Shein firm's referral.[1] All work done by the breakaway attorneys while in appellant's employ would be attributed to the Shein firm for the purpose of *quantum meruit* assessment, because the breakaway attorneys acted as appellant's agents at that time, and were appropriately compensated for their work.

KELLY, Judge,

concurring statement:

I join in the able opinion of my learned colleague Judge Johnson. I write separately to note that while we find that the damages sought are not too speculative to permit recovery, I find nothing in the majority opinion which would preclude the defendants from arguing on remand, as to each case in question, that without importuning the client nonetheless would have switched attorneys thus limiting damages, or as to cases taken on contingency, that damage assessment would be too speculative given the peculiar facts of the particular case. I also note that despite this reversal, the trial court's discretion remains broad as to the assessment of damages on remand.

---

**1.** The Shein firm, by assigning appellees to work on these cases, effectively "referred" the cases to appellees. This referral should be considered in assessing *quantum meruit.*