# Judge Technical Services v. Clancy

C.P. of Montgomery County, no. 97-22364.

*Michael Kristofco,* for plaintiff.
*Frederick McBrien III, Bradley T. Beckman* and *Daniel Bernheim,* for defendant.

ROSSANESE, *J.,* June 27, 2000—

## FINDINGS OF FACT

(1) Plaintiff, Judge Technical Services Inc., is a Pennsylvania corporation with its principal place of business at Two Bala Cynwyd, Pennsylvania. JTS is in the business of placing information technology consultants with specialized computer skills on a *temporary* basis in the Philadelphia area. Throughout the litigation, JTS has opened and closed an office in New York and maintains a place of business in Foxboro, Massachusetts. JTS is a wholly owned subsidiary of Judge Group Inc., a Pennsylvania corporation at the same location.

(2) Plaintiff, Judge Inc., is a Pennsylvania corporation with its principal place of business at Two Bala Cynwyd, Pennsylvania. Judge is in the business of placing information technology consultants with specialized computer skills on a *permanent* basis in the Philadelphia area. Judge is a wholly owned subsidiary of Judge Group Inc., a Pennsylvania corporation at the same location.

(3) Defendant, Alliance Consulting Group Inc., is a New York corporation with a principal place of business at Two World Trade Center Tower, Suite 1826, New York, NY. Alliance, formerly known as TechStaff Inc. also maintains offices at One Commerce Square, Suite 3250, Philadelphia, Pennsylvania, and in Boston, Chicago, Phoenix, Dallas, Washington, Atlanta and Wilmington. Alliance is in the business of placing information technology consultants with specialized computer skills on a *temporary* basis in each of the markets surrounding their offices.

(4) Defendant, Thomas Clancy, is an adult individual residing at 1904 Coles Blvd., East Norriton, Pennsylvania. He was previously employed by JTS.

(5) Defendant, Lawrence J. Senko, is an adult individual residing at 32 Conshohocken State Road, Pennsylvania. He was previously employed by JTS.

(6) Defendant, Brett Pinto, is an adult individual residing at 1825 North 29th Street, Apartment 1-B, Philadelphia, Pennsylvania. He was previously employed by Judge.

(7) On November 25, 1997, plaintiffs, JTS and Judge, filed a complaint and motion for preliminary injunction against Alliance, Clancy, Senko and Pinto. The complaint alleged breach of employment contract by Clancy, Senko and Pinto; tortious interference with contractual relations by Alliance; and theft of trade secrets by Senko. The motion for preliminary injunction sought injunctive relief for Clancy, Senko and Pinto's breach of restrictive covenants in their respective employment contracts.[1]

---

1. The docket reflects that on December 16, 1997, the parties entered into a stipulation regarding the issuance of the preliminary injunction before the Honorable William J. Furber Jr.

(8) In January of 1998, plaintiffs served interrogatories and request for production of documents on the defendants seeking information identifying all of Alliance's technical engineers and consultants.

(9) Defendants objected to the January 1998 discovery requests claiming that the same were too broad, and then served plaintiffs with interrogatories and requests for production of documents seeking the identification of any specific consultants, clients or information that plaintiffs deemed protected under the restrictive covenants of Clancy, Senko and Pinto.

(10) Both parties filed motions to compel responses to their respective discovery requests, and on February 6, 1998, we issued an order directing the parties to respond to the specific interrogatories and document requests.

(11) Defendant Alliance filed a motion for reconsideration of our February 6, 1998 order, which was later denied.

(12) On March 30, 1998, we issued an order of contempt against the defendants for failure to comply with our February 6, 1998 order.

(13) On May 28, 1998, we granted plaintiffs' second petition for contempt against defendant for failure to comply with our February 6, 1998 order. Our order directed that defendants deliver the requested discovery and imposed sanctions in the amount of $750. Our May 28, 1998 order also appointed a discovery master to review in camera the requested discovery in response to defendants' confidentiality concerns.

(14) On June 8, 1998, defendants appealed our February 6 and March 30, 1998 orders.

(15) On July 17, 1998, the Superior Court quashed defendants June 8, 1998 appeal as interlocutory.

(16) On August 11, 1998, we issued an order entering default judgment against the defendants as sanction for refusing to comply with our previous discovery orders.

(17) On September 11, 1998, defendants appealed our August 11, 1998 order.

(18) On November 13, 1998, the Superior Court quashed the defendants' September 11, 1998 appeal.[2]

(19) On March 26 and 31 and August 2 and 3, 1999, we held hearings on the matter to determine damages.

## CONCLUSIONS OF LAW

(1) On August 11, 1998, we entered a default judgment against the defendants on the issue of liability.

(2) The plaintiff bears the burden of proving damages by a fair preponderance of the evidence. *Delahanty v. First Pennsylvania Bank N.A.,* 318 Pa. Super. 90, 119, 464 A.2d 1243, 1257 (1983).

---

2. See *Miller Oral Surgery Inc. v. Dinello,* 342 Pa. Super. 577, 493 A.2d 741 (1985), holding that a sanction order entering judgment pursuant to Rule 4019(c)(3) authorizing default judgment against a party who does not comply with discovery orders is not subject to a petition to open; the party may request court to reconsider sanction order entering judgment, but neither reconsideration nor refusal to reconsider will transform an interlocutory order into one that is final and appealable.

(3) Plaintiffs, JTS and Judge, seek damages in the form of lost profits for the breach of defendants' restrictive covenants and Alliance's interference with contractual relations. Under Pennsylvania law, lost profits are the difference between what the plaintiff actually earned and what they would have earned had the defendant not committed the breach. *AM/PM Franchise v. Atlantic Richfield,* 526 Pa. 110, 119, 584 A.2d 915, 922 (1990).

(4) While lost profits as a form of damages need not be proved with mathematical certainty, sufficient evidence must be produced so that a court can arrive at an intelligent estimate of the lost profits without conjecture. *SHV Coal Inc. v. Continental Grain Company,* 376 Pa. Super. 241, 252, 545 A.2d 917, 922 (1988), *reversed on other grounds,* 526 Pa. 489, 587 A.2d 702 (1991)

(5) "A defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible . . . [I]t would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amends for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise . . . the risk of uncer-

tainty should be thrown upon the wrongdoer instead of the injured party . . . the precise amount cannot be ascertained by a fixed rule, but must be matter of opinion and probable estimate. And the adoption of any arbitrary rule in such a case which will relieve the wrongdoer from any part of the damages, and throw the loss upon the injured party, would be little less than legalized robbery." *Commonwealth Trust Co. of Pittsburgh v. Hachmeister Lind Co.,* 320 Pa. 233, 239-40, 181 A. 787, 790 (1935). In the case sub judice, default judgment was entered against the defendants for failure to produce documentation (*i.e.,* job candidates and clients that the individual defendants secured for Alliance) that would make assessment of damages possible. Defendants cannot withhold discovery and then complain that the plaintiffs' evidence is insufficient to prove damages. Therefore, pursuant to *Commonwealth Trust of Pittsburgh, supra,* we must estimate/approximate damages in the present case.

(6) In our case, all of the individual defendants' employment agreements with plaintiffs contained liquidated damage clauses.

(7) The liquidated damage clause in Pinto's employment agreement with plaintiff Judge, entitles plaintiff to all monies received by Pinto as a result of his breach and all costs and attorney's fees incurred by plaintiff in enforcing Pinto's agreement. Since the default judgment established that defendant Pinto breached his employment contract with the plaintiff, and since defendant Pinto refused to produce the discovery needed to determine the amount of monies received by Pinto as a result of that breach, we conclude that plaintiff is entitled to re-

ceive the amount of Pinto's salary, namely, $148,974.29, and attorney's fees incurred in enforcing the agreement, namely, $49,427.39 (total attorneys' fees for all three individual defendants $148,282.17 divided by 3) for a total of $198,401.68.

(8) The liquidated damages clauses in Senko and Clancy's employment agreements with plaintiff JTS, entitle plaintiff to 25 percent of the revenue or the profit earned by Senko and Clancy through soliciting or otherwise competing for accounts or personnel which became known to them through their employment with plaintiff. Plaintiff is also entitled to the legal fees incurred enforcing the agreements with Senko and Clancy. Because, Senko, Clancy and Alliance have refused to produce the records necessary for plaintiff to determine this number with precision, plaintiff is only required to prove this amount by just and reasonable inference as held in *Commonwealth Trust Co. of Pittsburgh, supra.* Further, because plaintiff has limited information at its disposal to establish the liquidated damages under Senko and Clancy's agreements, it is reasonable to infer that Clancy and Senko generated gross profits for defendant Alliance at least equal to their salaries, and that plaintiff would be entitled to 18 months worth of that amount, namely, $375,000 for Clancy and $160,500 for Senko. Moreover, under the agreement, plaintiff is entitled to recover reasonable attorney fees in enforcing the agreement, namely $49,427.39 for Clancy and $49,427.39 for Senko (total attorneys' fees for all three individual defendants $148,282.17 divided by 3). Accordingly, plaintiff is entitled to a total of $209,927.39 from defendant Senko and $424,427.39 from defendant Clancy.

(9) Where there is a finding of tortious interference with contractual relations, compensatory damages *must* be awarded, and punitive damages may be awarded if appropriate. *Joseph D. Shein P.C. v. Myers,* 394 Pa. Super. 549, 551, 576 A.2d 985, 986 (1990). Where, as here, the parties to a restrictive covenant do not assign a specific value for the covenant in the contract, the proper measure of damages is to ascertain what business the defendant company obtained as a direct result of the breach of those covenants. *Scobell Inc. v. Schade,* 455 Pa. Super. 414, 422, 688 A.2d 715, 719 (1997). Because we entered a default judgment against defendant Alliance for tortious interference with Pinto, Senko and Clancy contracts, we must award damages for the same. And, as defendant Alliance has refused to produce any discovery which would aid us in determining this damage amount, we conclude that it is reasonable to award compensatory damages equal to 18 months worth of Pinto, Senko and Clancy's salaries, namely, $148,974.29 for Pinto; $375,000 for Clancy; and $160,500 for Senko. We decline to award attorney's fees as Alliance was not a party under the employment agreements imposing same. However, we do award punitive damages in the amount of $700,000 since we conclude that defendant, Alliance, was indeed the driving force behind all defendants' refusal to abide by our discovery orders.

(10) The measure of damages for misappropriation of trade secrets is not what the plaintiff lost, but rather the benefits, profits or advantage gained by the defendant in the use of the trade secret. *International Industries Inc. v. Warren Petroleum Corp.,* 248 F.2d 696, 699 (3d Cir.

1957). As a result of the default judgment, defendant Senko is liable for damages caused by his misappropriation of plaintiff's secrets. Because, defendant Senko refused to produce any discovery (*ie.,* Senko's bank statements, cancelled checks, tax returns, credit card bills, etc. from January 1996) relative to the misappropriation of trade secrets, and because the only unrebutted testimony of record is that Senko bragged that he gleaned $60,000-$70,000 misappropriating trade secrets, we reasonably apply this number and conclude that plaintiff, JTS, is entitled to recover $60,000 in damages from defendant Senko for misappropriation of trade secrets. (Notes of Testimony 3/26/99, pp. 37-38.)

## ORDER

And now, June 27, 2000, after a default judgment having been entered against the defendants, and after a four day damages hearing thereafter, we hereby order and decree as follows:

(1) Plaintiff Judge Inc. is awarded $198,401.68 from defendant Pinto ($148,974.29 in salary plus $49,427.39 in attorney's fees) for breach of his employment agreement with Judge Inc;

(2) Plaintiff JTS is awarded $209,927.39 from defendant Senko ($160,500 in salary plus $49,427.39 in attorney's fees) for breach of his employment agreement with JTS;

(3) Plaintiff JTS is awarded $424,427.39 from defendant Clancy ($375,000 in salary plus $49,427.39 in attorney's fees) for breach of his employment agreement with JTS;

(4) Plaintiff Judge Inc. is awarded $148,974.29 from defendant Alliance for tortious interference with Pinto's employment contract;

(5) Plaintiff JTS is awarded $160,500 from defendant Alliance for tortious interference with Senko's employment contract;

(6) Plaintiff JTS is awarded $375,000 from defendant Alliance for tortious interference with Clancy's employment contract;

(7) Plaintiff Judge is awarded $233,333 (1/3 of $700,000—see conclusion of law no. 9) from defendant Alliance in punitive damages;

(8) Plaintiff JTS is awarded $466,667 (2/3 of $700,000—see conclusion of law no. 9) from defendant Alliance in punitive damages; and,

(9) Plaintiff JTS is awarded $60,000 from defendant Senko for theft of JTS trade secrets.

---

## PERMANENT INJUNCTION

And now, June 27, 2000, it is hereby ordered and decreed that defendants, Alliance Consulting Group Inc., Thomas Clancy, Lawrence J. Senko and Brett Pinto are hereby enjoined as set forth below:

(1) For a period of 18 months beginning from the entry of this order, neither Clancy nor Senko shall:

(a) directly or indirectly, engage in competition in a business similar to that of plaintiff, Judge Technical Services Inc. or be employed by a business in competition with JTS located within a radius of 50 miles of the office

to which they were assigned during their last year of employment with JTS. Nor will Clancy or Senko solicit any accounts or personnel or engage in any other competitive activities within the above-mentioned area;

(b) service any customers with whom JTS has done any business during the year immediately preceding each of their respective resignations from JTS;

(c) solicit, divert, take away or attempt to solicit, divert or take away any staff, temporary personnel, trade, business or good will from JTS or otherwise compete for clients or contract personnel which became known to them through their employment with JTS;

(d) influence or attempt to influence any of JTS's customers or technical personnel from doing business with JTS; or

(e) on behalf of themselves or any other company, divulge the name or address or any information concerning any JTS accounts, customers and business patrons or technical personnel as well as JTS's business methods, techniques, management and financial expertise and any of its plans with respect to acquisitions and future services to be rendered by JTS.

(2) Pinto shall not, for a period of one year after the entry of this order:

(a) conduct any business with any clients or customers with whom plaintiff Judge Inc. has done any business within the year immediately preceding his resignation;

(b) directly or indirectly divulge or disclose any information with regard to Judge's employer and applicant list, forms of agreements and contracts used in Judge's

business operations, advertising, marketing methods as well as scheduling, training and customer relations;

(c) directly or indirectly, own, manage, operate, control, be employed by, consult with, participate in or be connected in any manner with the ownership, management, operation, or control of any business enterprise which engages in the business of placing personnel or any business which competes with Judge or its affiliates, including JTS, in any manner within a radius of 100 miles from Judge's Bala Cynwyd office; or

(d) contact, solicit or attempt to contact or solicit any person who is employed by Judge at the time Pinto left Judge's employment for the purpose of inducing that person to terminate their employment with Judge.

(3) Alliance is hereby enjoined and restrained from:

(a) interfering with any employment agreements between plaintiffs and their employees;

(b) initiating any contact with any employees of Judge or JTS during business hours when such employees are at work;

(c) directly or indirectly soliciting or attempting to solicit any of plaintiffs' employees to cease employment with plaintiffs and commence employment with Alliance; and

(d) soliciting, servicing or continuing to service any clients or job candidate that became known to Alliance through any actions of Clancy, Senko or Pinto which amounted to a breach of their respective employment agreements with JTS and/or Judge.