FIRST DIVISION OF THE SAINT PAUL & PACIFIC RAILROAD COMPANY *vs.* EDMUND RICE and others.

September 30, 1878.

**Joinder of Causes of Action.**—The rule in respect to uniting, in the same complaint, several causes of action arising out of the same transaction, adopted by this court in *Montgomery* v. *McEwen*, 7 Minn. 276, (351,) approved and followed in this case.

**Demurrer—Plaintiff entitled to part of Relief prayed for.**—If, upon the facts stated in a complaint, the plaintiff is entitled to any portion of the relief prayed for, it is not open to the objection of not stating facts sufficient to constitute a cause of action, though the party may not be entitled to all the relief he asks.

Appeal by the defendants Edmund Rice, Horace Thompson, John S. Kennedy and Jesse P. Farley, from an order of the district court for Ramsey county, *Brill,* J., presiding, overruling their demurrers to the complaint.

The complaint states, in substance, that plaintiff is, and for more than twelve years last past has been, a railroad corporation, owning and entitled to the possession of the line of railroad extending from St. Anthony to Breckenridge, known as its Main Line, and the line of railroad extending from St. Paul by way of St. Anthony to Watab, known as its Branch Line and connecting with the Main Line at St. Anthony, including all tracks, bridges, fences, depots and depot grounds, station-houses, engine-houses, car-houses, machine-shops, and other structures, upon, pertaining to, or used in connection with such lines of railroad or either of them, or the business thereof; also all locomotives, tenders, cars, and other railway stock and equipments, and all machinery, tools, implements, fuel and materials, upon, belonging to, or used in constructing, operating, repairing, replacing, or in connection with such lines of railroad or either of them; and that until the happening of the grievances thereinafter mentioned, to wit, until on or about October 9, 1876, the plaintiff was in the actual possession of such lines of railroad, equipment and appurtenances, and engaged in the management and operation thereof.

That in February, 1876, the defendant Barnes became the president of the plaintiff, and the defendant Farley its general manager, and that, as such president and general manager, the said Barnes and Farley from that time took and had the possession of, and managed, operated and controlled such lines of railroad, with their equipment, appurtenances, etc., until the said October 9, 1876, when, having in their hands, in addition to such lines of railroad and other property of plaintiff, the sum of $157,618.04 in money, by them derived from the tolls and income of the railroad, and belonging to the plaintiff, they, the said Barnes and Farley, upon and pursuant to the demand of the defendants Rice, Thompson and

Kennedy, without the authority of the plaintiff, or any authority, and wrongfully and unlawfully, delivered over and surrendered to the defendants Rice, Thompson and Kennedy the said sum of $157,618.04, and the nominal possession, control and management of such lines of railroad, with the equipment and appurtenances and other property thereto appertaining; that the defendants Rice, Thompson and Kennedy thereupon immediately appointed the defendant Farley as their general manager of such lines of railroad, and have ever since kept and continued him in the management thereof; and that said Farley and Barnes have ever since, in fact, continued practically in the control and management of the lines, etc., as before, but in the name of the defendants Rice, Thompson and Kennedy.

That such delivery and surrender were made and accepted pursuant to a previous understanding between all of the defendants, for the purpose of wrongfully dispossessing the plaintiff of such lines of railroad and other property, and to defraud it of such sum of money, and to operate such lines in the manner aforesaid, and appropriate such sum of money, and all the tolls and income which should be derived from the operation of such lines, to the defendants Rice, Thompson, Kennedy, Farley and Barnes, all of whom well knew that said Rice, Thompson and Kennedy had no right to the possession of such lines of railroad, property or money, and that the said Barnes and Farley had no right or authority to deliver or surrender to them such lines, property or money, or any part thereof.

That the defendants have ever since been and are now wrongfully in the possession of such lines of railroad, with the equipment, etc., operating the same in the name of the defendants Rice, Thompson and Kennedy, but in the interest and for the purposes and benefit of all of the defendants. That they have received from said lines since said October 9, 1876, tolls and income to the amount of $495,000, all of which, together with the said sum of $157,618.04, they have

heretofore withheld and still withhold from the plaintiff; and all of which, (except the necessary expenses of operating the said lines of railroad, not exceeding $300,000,) as well as the said sum of $157,618.04, they have appropriated and converted to their own use.

That plaintiff has demanded of the defendants the return of the possession of the said lines of railroad, with the equipment, etc., and that they return and pay over to the plaintiff the tolls, income and moneys so by them received and converted, all of which the defendants have refused and still refuse to do.

That the defendants are suffering such lines of railroad, with the equipment, etc., to deteriorate in value from use and decay, and for want of suitable repairs and replacements; and that if they are suffered to remain in possession, the property will be further materially injured, and the tolls and income lost to the plaintiff.

Judgment is demanded:

1. That defendants surrender and deliver up to the plaintiff the said lines of road, with all and singular the equipment, etc.;

2. That they pay to plaintiff said sum of $157,618.04, with interest thereon from October 9, 1876;

3. That they account for all the tolls and income of the said lines of railroad since the plaintiff was so dispossessed thereof, (stating in detail their receipts and disbursements,) and pay over to the plaintiff such tolls and income, less the necessary expenses by them paid therefrom in the management and operation of said lines;

4. That a receiver be appointed pending the action;

5. For costs, and such further or other relief as shall be agreeable to equity and good conscience.

The defendants Rice, Thompson, Kennedy and Farley, demurred to the complaint, defendant Barnes not appearing.

The grounds of demurrer are thus stated:

"1. That several causes of action are improperly united."

"2. That there is a defect of parties defendant."

"3. That the said complaint does not state facts sufficient. to constitute a cause of action."

*Gordon E. Cole, E. C. Palmer* and *Geo. L. Otis,* for appel-- lants.

On demurrer, the complaint is not to be aided by inference, but every intendment is to be made against it. *People* v. *Supervisors of Ulster,* 34 N. Y. 268. The issue is whether, admitting the statements of fact to be true, the plaintiff is entitled to the relief which he claims. There being no answer, the relief grantable "cannot exceed that which is demanded in the complaint," (Gen. St. c. 66, § 246,) and the provision in that section, that "in any other case, the court may grant him any relief consistent with the case made by the complaint and embraced within the issue," does not apply. Hence such cases as *Marquat* v. *Marquat,* 12 N. Y. 336, and *Wright* v. *Wright,* 54 N. Y. 437, are not in point where the issue of legal. sufficiency is raised by demurrer. *Walton* v. *Walton,* 27 How. Pr. 347; 32 Barb. 203.

The rule that a demurrer does not lie to a demand for relief is limited to cases where more or greater relief is asked than the facts pleaded will warrant; a complaint which does not state facts enough to entitle the plaintiff to any part of the relief demanded is bad on demurrer, though it contain allegations entitling him to other relief. 2 Estee Pl. 609; *Walton* v. *Walton,* 27 How. Pr. 347; 32 Barb. 203; *Anonymous,* 11 Abb. Pr. 231. While legal and equitable relief may be sought in the same action, or in the alternative, yet if nothing of that sort appears, but the entire frame and structure of the complaint is that of a bill in equity, and the relief demanded is wholly equitable, the complaint is bad on demurrer as not. stating a cause of action, in any case where a bill in equity stating the same facts would be demurrable as not establishing a case for equitable relief, notwithstanding language may be found in the complaint sufficient, if properly pleaded in an action at law, to entitle the plaintiff to some measure of relief. A demurrer to such a complaint for defect of substance will be

proper where a demurrer to a bill for the same cause would have been sustained. The same rule obtains in equitable actions under the code as in equity pleading, that "every fact essential to the plaintiff's title to maintain the bill and obtain the relief must be stated in the bill, otherwise the defect will be fatal." 1 Van Santv. Eq. Pl. 95, 117, 191; *Haywood* v. *City of Buffalo,* 14 N. Y. 541; *Bradley* v. *Aldrich,* 40 N. Y. 511; *Mann* v. *Fairchild,* 2 Keyes, 111. Hence, for the purpose of arriving at the meaning and intent of the pleader, the demand for relief becomes a very important part of the complaint in an equitable action.

The complaint in this case is a bill in equity, proceeding on the same theory on which one partner may file a bill against his copartner and a third person who have combined in converting the partnership assets in fraud of the plaintiff. In such a case the injured partner, owing to the partnership relation, has no remedy by suit at law against both or either of the wrongdoers. But the present is simply the case of an agent exceeding his authority. His acts are void at law, no matter what his intent, and, being void, actions at law will lie to recover the money, the land and the mesne profits, respectively. This is not a case of a suit by stockholders as *cestuis que trust,* founded on a breach of duty by the officers of the company—their trustees. That would furnish a proper ground for equitable relief; but here it is the party holding the legal title, who can at any moment go into court and maintain it, who is suing, not any one who held the legal title in trust for it, but its own agents and parties to whom they have transferred the property without any authority, as is claimed, and against whom the plaintiff has a perfect remedy by common-law actions to recover the property transferred and damages. The only possible mode of establishing an equitable cause of action would be by alleging the insolvency of the defendants—even if that would be sufficient in a case like this. The relief asked is wholly equitable. In each prayer the court is asked to compel the defendants

to do something, to surrender the road, to return the money, to account for the tolls, to state particularly receipts and disbursements, to pay over the income less expenses, etc., and the general prayer is a prayer for equitable relief. The closing allegation before the prayer for relief is also out of place and meaningless, if addressed to a court of law, which regards only the legal title to the possession. The complaint then being a bill in equity seeking equitable relief alone, and failing to state a case entitling the plaintiff to any equitable relief, is bad in substance, and, on that ground, demurrable. This position is not in conflict with *Connor* v. *Board of Education*, 10 Minn. 352 (439,) where the prayer was in the alternative, for judgment for the purchase-money, or for a reconveyance if the defendant had no power to purchase; or with *Lockwood* v. *Bigelow*, 11 Minn. 70 (113,) where two sorts of equitable relief were demanded in the alternative; or with *Metzner* v. *Baldwin*, 11 Minn. 92 (150,) where the plaintiff was entitled to a part of the relief prayed for.

And notwithstanding the abolition of the distinction between forms of actions, as legal or equitable, yet, even where the same court administers both law and equity, a party bringing an equitable action must maintain it on equitable grounds or fail, even though he prove a good cause of action at law on the trial. *Mann* v. *Fairchild*, 2 Keyes, 111; and see *Bradley* v. *Aldrich*, 40 N. Y. 504; *Haywood* v. *City of Buffalo*, 14 N. Y. 534. And if the general scope of the prayer of the bill is for equitable relief, its language will be construed with reference to this general object; and even if the prayer contains a demand equally apt to legal or equitable relief, and sufficient in a complaint at law to entitle the plaintiff to relief in damages, yet being found in a prayer for general relief, and apt for such relief, then, if the ground for equitable relief wholly fails, the plaintiff cannot have relief at law on the basis of such prayer, on the ground that, in a proper case, a plaintiff, though not entitled to all, may have part of the relief demanded. The reason is obvious. Court and parties

are entitled to be informed by the complaint whether the relief sought is legal or equitable, that they may know by what tribunal the case is to be tried; and the plaintiff, having made his election in his complaint, cannot, on the trial, change his base, and pass from equity to law, from the chancellor to a jury; nor can he compel a trial by the court by alleging some ground of equitable relief, and failing in that, treat his complaint as a complaint at law, and have a trial of issues in an action for fraud and an assessment of damages before the court alone, in violation of the right of the other party to a trial by jury.

2. It is true that the complaint contains materials for various actions at law; but if the court were bound to sort them out, it would appear that the complaint was bad for misjoinder of causes of action. In an action at law for damages for acts done in execution of a conspiracy, all engaged in it may be made parties, by reason of their privity in the conspiracy, though part only of them actually did the acts. *Hutchins* v. *Hutchins*, 7 Hill, 104. If the unfaithful agents of the plaintiff had combined with the other defendants to turn over to them a large amount of plaintiff's money, to be converted to the use of all the defendants, this might sustain an action of tort against all to recover the money; but if at the same time these agents had also delivered possession of the road to the other defendants, under an agreement that they were to receive from the other defendants a share of the profits, and they, pursuant to such arrangement, operated the road under the other defendants, recognizing the possession of the latter and disclaiming any in themselves, ejectment would not lie against the agents to recover the railroad. But that is the case made by the complaint, and we have an ejectment suit against five defendants, against two of whom it will not lie; and joined with it an action in trover for the money against all five defendants. The complaint would be demurrable on that ground. Gen. St. *c.* 66, § 98; 1 Estee Pl. 216; *Thompkins* v. *White*, 8 How. Pr. 520. The claim for earnings

and an accounting for the income, deducting expenses, might lie against the defendants Rice, Thompson and Kennedy, if the plaintiff had set out the true character of their possession —that of trustees in a railroad mortgage made by plaintiff who had taken possession of the road under a power in the mortgage, for default in payment by plaintiff—and had shown ·the possession wrongful, and established their liability to account at all. But knowing this could not be shown, the plaintiff has chosen, in its complaint, to treat them as tres-passers or disseisors, and·it was never heard that trespassers or disseisors were liable to account for the actual income of ·the property. So that this cause of action, even if it exist .against Barnes and Farley, certainly does not exist against ·the other defendants.

The fact that the complaint wholly fails to comply with ·Gen. St. c. 66, § 98, which requires, in case of two or more .causes of action joined in a complaint, that "causes of action ·so united shall * * * affect all the parties to the action * * * and be separately stated," is an answer to the ·claim that the complaint can be maintained because all the wrongful acts.stated arose out of the same transaction. The first subdivision of the section applies principally to equita-ble rather than legal actions, and the last clause "or trans-.actions connected with the same subject of action," can probably have no application to legal .causes of action, and ·can only be resorted to in some equitable suits involving com-plicated matters. Pomeroy on Remedies, § 475. A case .closely analogous to this is *Gardner* v. *Ogden,* 22 N. Y. 327; .and see cases as to misjoinder of causes of action in Pomeroy .on Remedies, §§ 481–2.

A complaint is not the less demurrable for misjoinder of .causes of action because the pleader has committed the further fault of failing to separately state and distinctly number the different causes of action thus misjoined. *Goldberg* v. *Utley,* 60 N. Y. 427; *Wiles* v. *Suydam,* 64 N. Y. 173. *Bass* v. *Com-stock,* 38 N. Y. 21, is not an authority to the contrary. These

cases overrule the dicta in *Cheney* v. *Fisk*, 22 How. Pr. 236, relied on by plaintiff.

*Bigelow, Flandrau & Clark*, for respondent.

The objection that the complaint does not state facts suffi-cient to constitute a cause of action cannot be sustained unless the complaint is so fatally defective that, even after verdict for plaintiff, he could not be entitled to any judgment in his favor.   2 Wait Pr. 453, and cases cited; *Cowley* v. *Davidson*, 10 Minn. 314 (392;) *Connor* v. *Board of Education*, 10 Minn. 352 (439;) *Lockwood* v. *Bigelow*, 11 Minn. 70 (113;) *Metzner* v. *Baldwin*, 11 Minn. 92 (150;) *State of Wisconsin* v. *Torinus*, 22 Minn. 272; *Marquat* v. *Marquat*, 12 N. Y. 336; *Prindle* v. *Caruthers*, 15 N. Y. 425; *Emery* v. *Pease*, 20 N. Y. 62; *Bank of Havana* v. *Magee*, 20 N. Y. 355; *Phœnix Bank* v. *Donnell*, 40 N. Y. 410; *Wright* v. *Wright*, 54 N. Y. 437; *Graham* v. *Camman*, 13 How. Pr. 360; *Hillman* v. *Hillman*, 14 How. Pr. 456.

It is not true that the relief is purely equitable, nor, if it were, should the pleading be tested by the rules of the old equity system.   A demand for judgment that the defendant surrender up real or personal property is as good, in an action at law, as a demand that the plaintiff recover such property.   Under the chancery practice, the want of equity in the bill, no matter what legal rights it disclosed, was fatal, because it went to the jurisdiction of the court; but where the same court administers both legal and equitable remedies, not only under the same form of pleading, but often in the same action, (Gen. St. *c.* 66, §§ 1, 70, 98; Moak's Van Santvoord, 736; 2 Wait Pr. 401; *Winsted Bank* v. *Webb*, 39 N. Y. 325,) if the complaint states any cause of action, either legal or equitable, though it be intended as one of these and prove to be the other, the court will entertain the case, and grant the relief appropriate to the facts pleaded and proved. *Wright* v. *Wright*, 54 N. Y. 443.

It may be that a demurrer would lie to a complaint stating facts showing a clear right to legal and none to equitable

relief, but with a prayer for the latter alone, and admitting no other construction. But our view is otherwise, and that the entire omission of a prayer for relief is not ground of demurrer. Certainly, a demurrer will not lie to the relief demanded, no matter how obscure, inconsistent or meagre. The relief demanded in no way affects the defendant; for if he fails to answer, he is protected by the provision that the relief granted cannot exceed that demanded; and if he answers, the plaintiff can have any relief consistent with the case made, and embraced within the issue, without regard to the demand in the complaint. Gen. St. c. 66, § 246; 2 Wait Pr. 403; *Cowley* v. *Davidson*, 10 Minn. 314 (342;) *Connor* v. *Board of Education*, 10 Minn. 352 (439;) *Smith* v. *Jordan*, 13 Minn. 264; *Dewey* v. *Leonard*, 14 Minn. 153; *Marquat* v. *Marquat*, 12 N. Y. 336; *Emery* v. *Pease*, 20 N. Y. 62; *Barlow* v. *Scott*, 24 N. Y. 40; *Armitage* v. *Pulver*, 37 N. Y. 494; *Winsted Bank* v. *Webb*, 39 N. Y. 325; *Conaughty* v. *Nichols*, 42 N. Y. 83. A demurrer under the 6th subdivision will be overruled, if, on the facts stated in the complaint, the plaintiff is entitled to any relief whatever, although not demanded. Voorhies Code (10th Ed.) 206, note *a*; *Stuyvesant* v. *Mayor of New York*, 11 Paige 414.

In *Bradley* v. *Aldrich*, 40 N. Y. 511, it was merely held that on a prayer for purely equitable relief, the plaintiff could not have legal relief on facts proved at the trial, but not pleaded; and *Haywood* v. *City of Buffalo*, 14 N. Y. 534, goes no further. In *Mann* v. *Fairchild*, 2 Keyes, 106, the court held that plaintiff had made out no case for equitable relief, and that if a strictly legal claim was made out, it was barred by the statute of limitations. In *Walton* v. *Walton*, 20 How. Pr. 347, (s. c. *Anonymous*, 11 Abb. Pr. 231,) the prayer was for separation from bed and board, and the court held that the plaintiff could not have the nullity of the marriage adjudged, though facts were stated sufficient to sustain such a judgment.

2. A demurrer for misjoinder of causes of action should specify the several causes of action claimed to be improperly

united, and the defendants' demurrer on this ground is therefore insufficient. Voorhies Code (10th Ed.) 208, note *d*; Moak's Van Santvoord, 765; Pomeroy on Remedies, § 451; 2 Estee Pl. 621, 624, 626; *Powers* v. *Ames*, 9 Minn. 164 (178;) *Purdy* v. *Carpenter*, 6 How. Pr. 361; *Cheney* v. *Fisk*, 22 How. Pr. 236; *Skinner* v. *Stuart*, 13 Abb. Pr. 442; *Richtmyer* v. *Richtmyer*, 50 Barb. 55.

Even if the complaint contained several causes of action which could not properly be united, it would not be demurrable on that ground, because they are all embraced in one count, and are not separately stated. Defendants' remedy is by motion. *Cheney* v. *Fisk*, 22 How. Pr. 236; 2 Wait Pr. 451.

3. The complaint in fact contains but one cause of action; but, if there are several, they all arise out of or are included in "the same transaction, or transactions connected with the same subject of action," and are therefore properly united; Gen. St. *c.* 66, § 98; and each such cause of action subsists against all the defendants. The charge is that all of them took and appropriated to themselves $157,618.04 of the plaintiff's money, and its railroad, with the equipment and appurtenances, and have ever since been in possession, and appropriated the tolls and income of the road. The plaintiff may have or be entitled to some particular remedy against Barnes and Farley, because they were its agents, and in the possession of the property as such, when the wrong was perpetrated; but if this be so, the plaintiff is not seeking that remedy in this action, nor prosecuting them in that character. No charge is here made against them as agents, nor because of their former relation to the plaintiff or the property. What is said of that relation is merely by way of describing how the defendants were able to and did dispossess the plaintiff. There is no analogy between this case and *Gardner* v. *Ogden*, 22 N. Y. 327. And see Pomeroy on Remedies, §§ 454–5; *Montgomery* v. *McEwen*, 7 Minn. 276 (351;) *Lattin* v. *McCarty*, 41 N. Y. 107; *Wright* v. *Wright*, 54 N. Y. 437;

v.25m—19

*Colton* v. *Jones,* 7 Robt. 164; *Richtmyer* v. *Richtmyer,* 50 Barb. 55; *Hillman* v. *Hillman,* 14 How. Pr. 456.

CORNELL, J. It appears from the complaint that the plaintiff is a railroad corporation, created and organized under the laws of this state, and invested with the usual franchises pertaining to such a corporation in respect to certain lines of railroad particularly described in the complaint, and extending through different counties and portions of the state. That at the time when the grievances complained of occurred, it owned and was in the actual and lawful possession of its said several lines of railroad, together with the appurtenances thereto belonging, and the rolling stock, equipment, including tools, implements, fuel and material, mentioned in said complaint, and then held for use in connection therewith, and for operating and repairing the same; and that it was then engaged in operating the same, and was in the enjoyment of the tolls and income received and derived therefrom, of which it then had on hand in its treasury the sum of $157,618.04. That being so in the possession and use of such corporate property as corporation owner, the defendants, on October 9, 1876, by means of certain wrongful acts by them then done, and in which they all participated, unlawfully dispossessed the plaintiff, and thereupon took from it and appropriated to their own use said money and other property, and began operating, and thence continued to operate, the said lines of road, and to collect and receive the tolls and income thereof for their own use and benefit. That they still continue to withhold this property from the plaintiff, and refuse to deliver up the same or any part thereof, although requested so to do. It is also alleged that said lines of road, with their equipment and appurtenances, are becoming greatly depreciated in value by the use of the defendants, and for want of proper management and repairs, and that, if allowed longer to remain in their possession and control, the same will become materially injured and impaired, and the tolls and income thereof will be lost to the plaintiff. The relief prayed for is a judgment—

*First*—That defendants surrender and deliver up to the plaintiff the said lines of railroad, with all and singular the equipments and appurtenances, and other the said property pertaining thereto.

*Second*—That they pay to the said plaintiff the said sum of $157,618.04, with interest from the time of the conversion thereof.

*Third*—That they account to the plaintiff for all tolls and income of the said lines of railroad received by them in the operation thereof, and pay them the balance, after deducting the necessary expenses in managing and operating the same.

*Fourth*—That a receiver be appointed to take charge of the property pending the action; and,

*Fifth*—For such further or other relief, or both, as the nature of the case requires, or as shall be agreeable to equity and good conscience.

That the plaintiff is legally entitled, upon the facts stated, to the specific relief prayed for in the first and second specifications, admits of no question; and the objection taken by the demurrer, that the complaint does not state facts sufficient to constitute a cause of action, was therefore properly overruled. To sustain an objection of this kind, the pleading must be so wholly defective in its statements of fact as to present no cause of action whatever entitling the party making it to any portion of the relief which he claims.    The fact that he claims more than he is entitled to, or that he joins with a rightful legal claim a demand for other or equitable relief to which he has no right, is not a defect which can be taken advantage of under an objection of this character.    *Cowley* v. *Davidson*, 10 Minn. 314 (392;) *Connor* v. *Board of Education of St. Anthony*, 10 Minn. 352 (439;) *Lockwood* v. *Bigelow*, 11 Minn. 70 (113;) *Metzner* v. *Baldwin*, 11 Minn. 92 (150.)

The remaining question to be considered relates to the objection that several causes of action have been improperly united.    Without considering or determining the point raised by the plaintiff that a defect in pleading of this character

cannot be reached by a general demurrer that fails to point out specifically the distinct causes of action which are claimed to be thus improperly united, we are of the opinion that there is no such misjoinder of causes of action in this case as renders the pleading defective on that account.

The distinction which formerly existed between actions at law and suits in equity, and the forms of all such actions and suits, have been abolished, and there now remains but one form of action for the enforcement or protection of private rights, and the redress of private wrongs, which is denominated a civil action. Gen. St. c. 66, § 1. The form of proceedings in every such action, and the rules by which the sufficiency of pleadings therein are to be tested, are matters of statutory regulation. Gen. St. c. 66, § 70. The same court possesses both law and equity jurisdiction, and hence is competent to take cognizance alike of legal and equitable rights, and to administer legal remedies, or grant equitable relief, or do both, according as the nature of the case may require, and as may be permitted by the statute. And it is expressly provided that several causes of action, whether legal or equitable, may be united in the same complaint, whenever they are all included in the same transaction, or transactions connected with the subject of action, provided they affect all the parties to the action, and do not require different places of trial. Gen. St. c. 66, § 98. In *Montgomery* v. *McEwen*, 7 Minn. 276 (351,) this court, in construing this provision, say: "We think the language here used was intended to allow the plaintiff to litigate everything arising out of the same transaction, or transactions connected with the same subject of action, in one suit, and that whether the relief sought may be partly legal and partly equitable, or wholly of the nature of one or the other." And it was there held that a cause of action for the recovery of the amount due on a note given by the defendant to the plaintiff therein was properly joined in the same complaint with an equitable claim by the latter for the delivering up and cancellation of a note and mortgage given.

by him to the former, inasmuch as both causes of action orig-
inated in, and constituted parts of, one entire transaction;
and it was also held, in answer to an objection that neither of
these causes of action, taken separately, was sufficiently stated
to entitle a recovery by the plaintiff, that this was not a defect
fatal to the sufficiency of the complaint, provided it contained
such a statement of facts comprising the whole transaction as,
taken together as a whole, showed the plaintiff entitled to
both kinds of relief sought. The doctrine of this early case,
which was decided in 1862, has never since been questioned,
and it is too late now to disturb or unsettle the rule of prac-
tice which it established, if we felt so disposed.

The decision of that case, however, seems to us to be in
entire harmony with the general spirit, purposes and objects
of our code system of practice, and especially with the mani-
fest design of the particular provision under consideration,
which was undoubtedly to avoid a multiplicity of suits, by
enabling parties to settle and determine in one action, under
the limitations prescribed by the statute, all matters of differ-
ence between them, arising out of and relating to the same
transaction, and so connected with it as to constitute but
separate parts of the same. The present case falls clearly
within both the letter and the spirit of the statute. The dif-
ferent matters of fact stated and embraced in the complaint
as the foundation of plaintiff's action all have reference to
one and the same transaction, of which they severally form
parts. They all occurred between the same parties, plaintiff
and defendants. The grievances complained of affect equally
all the parties to the action, and they were not of such an
incongruous or adverse nature as to produce any embarrass-
ment or difficulty in disposing of them all in one suit. The
alleged injuries all arose out of the one wrong committed by
the defendants, in unlawfully dispossessing the plaintiff of
its several lines of railroad, money and other corporate prop-
erty, and in taking and holding the possession thereof, and
using the same for their benefit, by operating the lines of

road, and appropriating the earnings thereof, then taken, and subsequently acquired, to their own use. The entire property and money thus wrongfully obtained by the defendants at the same time and in the same transaction, though partly real and partly personal, was owned and held in its entirety by the plaintiff as a railroad corporation and as railroad property, which it had the legal right under its charter to hold, possess and enjoy for corporate purposes; and it has the clear legal right to be restored to its possession as a whole, and to recover such damages as it may have sustained by reason of having been thus deprived of its use; and in case any portion of such property has been so converted and used that the same cannot be returned in specie, it is also clearly entitled to recover full compensation in damages as to that portion. To compel the plaintiff, in order to obtain full redress for the wrong thus committed, to separate the transaction into as many parts as there were different kinds and pieces of property affected by it, and to bring a separate action for each, one for the recovery of the real property, another for the conversion of the money, and as many other distinct actions to recover the possession of the personal property as there were distinct wood-piles or other separate articles situate in different counties and judicial districts along the lines of its road, would involve a vexatious multiplicity of actions which it was the obvious intention of this provision of our statute to avoid. The case, in our judgment, is one in which all the rights of the parties, as disclosed by the complaint, can and ought to be fully settled and determined in one action; and assuming the facts to be as stated in the complaint, the manner of their statement as parts of one entire transaction is unobjectionable, and plainly and concisely done. Whether, upon the facts stated, the plaintiff is entitled to the accounting prayed for, or to the appointment of a receiver pending the action, need not be considered, as was correctly held by the court below, because those points are not raised by the demurrer. Order affirmed.