Jack H. GABLER, et al., Appellants,

v.

Elizabeth FEDORUK, et al., Respondents.

No. A08–0517.

Court of Appeals of Minnesota.

Oct. 14, 2008.

Mark C. Jennings, Duluth, MN, for appellants.

Matthew H. Beaumier, Andrew J. Harrington, Gerlach Beaumier, Attorneys at Law, LLP, Duluth, MN, for respondents.

Considered and decided by ROSS, Presiding Judge; MINGE, Judge; and JOHNSON, Judge.

## OPINION

ROSS, Judge.

This appeal regarding a dispute between two landowners over the location of their common boundary—with appellants Richard and Patricia Fredricks and their predecessor in interest, Jack Gabler, on one side of the boundary, and respondents Elizabeth and Stanley Fedoruk on the other—requires us to decide whether the district court may, in its discretion, refuse to give legal effect to a boundary that it has expressly found to exist by practical location. We must also decide whether the district court may order the landowners on one side of the boundary to pay the owners on the other side the full, fee-simple ownership value of the entire disputed property to compensate them for a prescriptive easement that allows limited possession and limited use of a part of the disputed property. Because the answer to both questions is no, we reverse the district court's judgment granting less than a fee simple interest to the Fredrickses after they proved the location of the boundary, and we reverse the damages award to the Fedoruks made purportedly to compensate them for the Fredrickses' future use of the

disputed land—land in which, according to the boundary as determined by the district court, the Fredrickses are entitled as a matter of law to a fee simple interest.

## FACTS

The facts of this dispute over lakeside property in St. Louis County were determined by the district court after a bench trial in October 2007. In 1973, Mary Mauriala divided her Cotton Township parcel of land and sold Lester Mattson the western portion of it, retaining the rest. Mattson soon removed trees and underbrush along the boundary separating his property from Mauriala's property, and he constructed a driveway there on land that he believed to be his. Mauriala and her daughter, Elizabeth Fedoruk, continued to own and possess the adjoining parcel to Mattson's east and did not object to the construction or existence of Mattson's driveway. Only Mattson and his guests used the driveway the entire nine years that he owned the parcel, and Mattson maintained the driveway along with the rest of his land to the west of it.

Mattson sold his parcel to Jack Gabler in 1982. Like Mattson, Gabler exclusively used and maintained the driveway without objection from Mauriala or Elizabeth Fedoruk the entire time he owned it. For nine years he had the same belief as Mattson that the boundary was to the east of the driveway. Mauriala died in 1986 and Elizabeth Fedoruk and her husband, Stanley Fedoruk, inherited her parcel. In 1991 Gabler learned that the driveway was not on his land as described in the recorded deed, but on the Fedoruks' land.[1] He notified the Fedoruks of the encroachment and offered to resolve it, but the Fedoruks

---

1. The district court presumed that Gabler learned about the driveway's misplacement after a survey, and there is nothing in the record to confirm or contradict this presumption.

did not respond substantively. They neither asked Gabler to relocate the driveway nor investigated whether or to what extent the driveway actually extended beyond the recorded boundary onto their parcel. Gabler continued to maintain the driveway and a parallel portion of land immediately to its east, extending the full length of the lot even beyond the driveway to the lakeshore, where a boat ramp serving Gabler's parcel had been in place since 1973 also without objection by the Fedoruks. Gabler maintained the segment as his own until he sold the property to the Fredrickses in 2006.

Coinciding with the Gabler—Fredricks sale in 2006, Gabler and the Fredrickses brought suit against the Fedoruks seeking a declaration from the district court that the boundary was established by its practical location based on the 33–year performance of the parties and their predecessors. In the alternative, they requested that the district court grant them a prescriptive easement for continued use of part of the disputed land, specifically the driveway. After trial, the district court sua sponte requested that the parties submit supplemental briefing on the disputed land's value. The parties submitted motions, and the Fedoruks presented an appraisal valuing the land.

Based on the trial evidence and posttrial submissions, the district court concluded that Gabler and the Fredrickses "have established a boundary by practical location through acquiescence." But the district court did not stop its analysis there. It went on to find that Gabler and the Fredrickses also proved their alternative theory of prescriptive easement. The district court then declared, "As this Court finds Plaintiffs have proved entitlement under either theory, the Court must choose one." Without stating any reason why it would not recognize the boundary that it found to

exist, the district court announced, "In the context of this case, the Court feels the most just resolution is to grant Plaintiffs a prescriptive easement over Defendants' land. This entitles Plaintiffs to use the driveway in the same manner as they have historically used it, ... while allowing Defendants to maintain[ ] title to the land itself."

The district court then also awarded the Fedoruks damages of $8,400, which it determined to be "the value of the property burdened by prescriptive easement" based on the Fedoruks' submitted appraisal, which valued not only the land on which the driveway lay but also the land that extended from the driveway to the lake.

Gabler and the Fredrickses appeal.

## ISSUES

I. Did the district court err as a matter of law by failing to enter judgment establishing the boundary by practical location after it determined that Gabler and the Fredrickses had proven the boundary?

II. Did the district court abuse its discretion by awarding damages to the Fedoruks to compensate them for the Fredrickses' future use of the land?

## ANALYSIS

### I

■ Gabler and the Fredrickses challenge the district court's decision not to order the recognition of the boundary between the two parcels after the court expressly found that they had established the boundary by practical location by clear and convincing evidence. The challenge is well founded.

■ An action for the establishment of a boundary by practical location, like the

729

closely related action for adverse possession, is a title-transferring event that relies in substantial part on the deed holder's conduct. *See Benz v. City of St. Paul,* 89 Minn. 31, 37, 93 N.W. 1038, 1039 (1903) (explaining that a high quantum of evidence is necessary because establishing a boundary by practical location "shall deprive the party claiming under the deed of his legal rights"). A party claiming boundary by practical location establishes the boundary in one of three ways: (1) by acquiescence "for a sufficient length of time to bar a right of entry under the statute of limitations"; (2) by an express agreement of the parties claiming the land on both sides of the line and then by acquiescence; or (3) by estoppel. *Theros v. Phillips,* 256 N.W.2d 852, 858 (Minn. 1977).

■ To establish a boundary by practical location through acquiescence, Gabler and the Fredrickses had to demonstrate that the Fedoruks affirmatively or tacitly consented to the placement and maintenance of the driveway for at least 15 years. *LeeJoice v. Harris,* 404 N.W.2d 4, 7 (Minn. App.1987); *see also Fishman v. Nielsen,* 237 Minn. 1, 7–8, 53 N.W.2d 553, 556–57 (1952) (finding boundary by practical location through acquiescence when two predecessors in title agreed on a line, built a fence on the line, and acquiesced in the line for at least 18 years). When landowners occupy their adjoining premises up to a certain line that they both recognize and acquiesce in for 15 years, they are generally precluded from contesting that boundary line. *Amato v. Haraden,* 280 Minn. 399, 403–04, 159 N.W.2d 907, 910 (1968); *see* Minn.Stat. § 541.02 (2006) (providing the statute of limitations for actions to recover real estate). Given the significance of the divestiture that follows a finding that a boundary has been established by practical location, the disseizor must establish the boundary by "clear, positive, and unequivocal" evidence. *Benz,* 89 Minn. at 37, 93 N.W. at 1039.

■ The district court followed the case law, carefully applying it to the uncontested facts, and it concluded that Gabler and the Fredrickses proved their case by clear and convincing evidence and established a boundary by practical location through acquiescence. It held, "Plaintiffs are entitled to the disputed area under this theory." The Fedoruks seem to contest this conclusion, but, as Gabler and the Fredrickses point out, the Fedoruks did not file a notice of review challenging the district court's supporting factual findings, and even if they had, they did not provide a trial transcript to facilitate our review of the factual basis for the finding. *See Duluth Herald & News Tribune v. Plymouth Optical Co.,* 286 Minn. 495, 498, 176 N.W.2d 552, 555 (1970) (noting lack of a transcript preludes review of factual questions); *Fritz v. Fritz,* 390 N.W.2d 924, 925 (Minn.App.1986) (ruling appellate court cannot review findings of fact where transcript not provided). "Even if the judgment [in the district court] is ultimately in its favor, a party must file a notice of review to challenge the district court's ruling on a particular issue." *City of Ramsey v. Holmberg,* 548 N.W.2d 302, 305 (Minn. App.1996), *review denied* (Minn. Aug. 6, 1996); *see also In re Estate of Barg,* 752 N.W.2d 52, 74 (Minn.2008) (deeming issue waived when no notice of review was filed). On the unchallenged facts as found by the district court, the evidence supports the finding that Gabler and the Fredrickses established the boundary by practical location.

■ Gabler and the Fredrickses maintain primarily that the district court had no basis to grant merely a prescriptive easement to limited use of the land after they proved the boundary by practical lo-

cation. The difference between these two land interests is significant. What is at stake is title to the disputed land, because "[a]n easement by prescription is defined by the use made of the land giving rise to the easement and carries with it no title to or right of possession of the land itself," *Romans v. Nadler,* 217 Minn. 174, 174, 14 N.W.2d 482, 483, (1944), while "[t]he effect of a practical location of a boundary line is to divest one proprietor of a conceded title by deed[.]" *Marek v. Jelinek,* 121 Minn. 468, 470, 141 N.W. 788, 788 (1913). We must therefore decide whether the district court may enter a judgment that disregards the title-transferring legal effect of its holding that Gabler and the Fredrickses established the boundary by practical location.

We first determine the appropriate standard of review for this question. Actions to quiet title and determine adverse claims are equitable actions. *Miller v. Hennen,* 438 N.W.2d 366, 371 (Minn. 1989) (stating that adverse claims to property are subject to equitable relief). It is true that district courts generally have broad discretion when fashioning remedies. *Wenzel v. Mathies,* 542 N.W.2d 634, 643 (Minn.App.1996), *review denied* (Minn. Mar. 28, 1996). And it is particularly true that "[a] court may fashion equitable remedies based on the exigencies and facts of each case so as to accomplish justice." *Pooley v. Mankato Iron & Metal, Inc.,* 513 N.W.2d 834, 837 (Minn.App.1994), *review denied* (Minn. May 17, 1994). But we are not deciding whether the district court fashioned an appropriate remedy to satisfy any unique equities of the case. We are asked instead to decide whether a district court is free to disregard the basic remedy that has always been granted in Minnesota's long and consistent jurisprudence addressing the establishment of a boundary by practical location—boundary relocation

and divestment of title. So understood, our review does not afford the generous breadth of discretion framed in cases such as *Pooley* and *Wenzel.*

The district court found that a boundary by practical location was established, but it entered judgment with substantially less relief on another, non-conflicting finding that Gabler and the Fredrickses had also proven their right to an easement by prescription. Whether the district court's judgment was a proper consequence of its findings is a question of law, which we review de novo. *See Ebenhoh v. Hodgman,* 642 N.W.2d 104, 108 (Minn.App.2002) (reviewing de novo whether the district court erred by concluding that disseizor had proven adverse possession and repeating the court's duty to determine whether the findings support the district court's judgment). We conclude that the district court's judgment should have recognized the boundary by practical location and that the omission was error. By its very terms, a judicial action to determine a boundary by practical location is designed to give full legal effect to the boundary as it has been practically recognized and treated by the parties over a lengthy period. And this effect includes the transfer of title from the deed holder to the disseizor. An unbroken chain of cases throughout the state's history accentuates this conclusion.

No serious question exists that the remedy for the establishment of a boundary by practical location in Minnesota has always included the automatic recognition of that boundary and the transfer of title as a matter of right to the disseizor. We are aware of (and the Fedoruks cite) no appellate decision that has treated this remedy as optional or discretionary in the district court once the elements have been met, either when deciding claims of boundary

by practical location or similar title-divestment claims under the related equitable doctrine of adverse possession.

To the contrary, once the elements have been established, application of the land-transfer remedy has been uniform and plainly nondiscretionary, despite the generally equitable nature of the overall action. For example, in *Ebenhoh*, we held that the disseizors were *"entitled to* the disputed tract" based on our de novo application of the elements of adverse possession. 642 N.W.2d at 107, 112 (emphasis added). And without engaging in or requiring any additional weighing of equities, based on our holding that the elements of the doctrine were satisfied, we "direct[ed] the district court to enter judgment in favor of appellants and to enter an order establishing the boundary between the two parcels." *Id.; see also Halverson v. Vill. of Deerwood,* 322 N.W.2d 761, 767–68 (Minn.1982) (holding that township was estopped from denying that a boundary was established by practical location as a matter of law based on the elements applied on appeal without any additional equitable or discretionary consideration); *SSM Invs. v. Siemers,* 291 N.W.2d 383, 386 (Minn. 1980) (remanding to the district court with directions to amend the judgment consistent with the supreme court's analysis reflecting title by adverse possession after holding that clear and convincing evidence demonstrated adverse possession); *Ehle v. Prosser,* 293 Minn. 183, 192, 197 N.W.2d 458, 463–64 (1972) ("Having concluded that plaintiffs *have established title to* the disputed property by adverse possession, it is not necessary to consider ... establishment of a practical boundary line."); *Konantz v. Stein,* 283 Minn. 33, 36, 167 N.W.2d 1, 4 (1969) (discussing whether the plaintiffs *"had acquired title to* the land in controversy ... [by virtue of proof of] practical location of the boundary line"); *Marek,* 121 Minn. at 471, 141 N.W. at 788

("The effect of a practical location of a boundary line is to divest one proprietor of ... a title by deed." (citing *Beardsley v. Crane,* 52 Minn. 537, 546, 54 N.W. 740, 742 (1893))).

The dissent highlights various cases unrelated to property-line disputes for the proposition that a district court sitting in equity generally has latitude to fashion an equitable remedy suitable to a given case's facts. This proposition is not in question. But the proposition does not address this train of cases teaching that, in the class of title-divesting equitable actions of adverse possession and boundary by practical location, the factual establishment of a new boundary in Minnesota always results in a judgment acknowledging the new boundary.

The dissent does point to one Minnesota boundary-by-practical-location case, *Wojahn v. Johnson,* 297 N.W.2d 298 (Minn. 1980), which it describes as "illustrat[ing] that a district court has discretion to fashion an equitable remedy in a boundary-dispute case based on the particular facts of the case." *Wojahn* neither holds nor implies that a district court may withhold the legal effect of a new boundary after a party has prevailed by establishing the boundary by practical location. Indeed, the *Wojahn* court was concerned with a shared driveway that was the only access to the plaintiff's property. This led it to remand the case for the district court to address an issue that had not been raised or considered, which was whether an easement might be appropriate on the facts given that a boundary relocation could *not* be established. Most relevant to our discussion, the supreme court described its own holding in a manner that clearly distinguishes *Wojahn* from this case: "Equivocal and amorphous evidence of the existence and location of an alleged boundary fence *did not,* as a matter of law, establish

it as marking the practical location between two parcels of land." 297 N.W.2d at 301 (emphasis added). Here, by sharp contrast, the unchallenged district court holding is that the evidence of practical location *did* establish a boundary between two parcels of land. Additionally, the *Wojahn* court's comment that the "balancing of the equities is more just than the automatic grant of an injunction" cannot be read as a call to balance equities regarding whether to credit a boundary already found to exist. *Id.* at 307. Rather, the statement concerned whether one party should be enjoined from continuing his historic use of a driveway to access his home while the rights to the disputed land used by both of the competing landowners are resolved in the ongoing litigation, and it has no bearing on how Minnesota law always treats the prevailing party's establishment of a boundary by practical location.

■ No precedent in Minnesota law exists for a district court to refuse to give legal effect to a boundary by practical location after finding that the disseizor has established the boundary. Instead, "[i]n Minnesota adverse possession of land … not only bars the [deed holder's] remedy but practically extinguishes the right of the party having the paper title and vests a perfect title in the adverse holder." *Ehle*, 293 Minn. at 192, 197 N.W.2d at 463. The same must be true of the establishment of a boundary under the related doctrine of practical location, which effectively extinguishes the right of the party having the paper title and vests title in the disseizor. We conclude that a district court's judgment may not disregard the legal effect of a boundary established by practical location.

The Fedoruks urge that we frame the district court's judgment granting a prescriptive easement as merely reflecting its discretionary selection of one equitable remedy over another. This argument builds on the district court's characterization of its decision as a choice between optional remedies. We are not persuaded. Despite the dissent's view that the district court may apply equitable factors to give no legal effect to a boundary that has been established by practical location, the district court here did no such balancing of equities. Neither the district court's findings nor the record hints of fraud, misrepresentation, unclean hands, unfair dealing, or any other equitable concern that might affect the judgment even under the dissent's suggested approach. The district court suggested no equitable basis to disregard in its judgment the boundary that it had recognized in its findings and analysis. And the Fedoruks' argument that an easement is appropriate based on the Fredrickses' focus at trial on driveway access rather than on the land extending lakeward from the driveway is not relevant; that the focus may have been driveway access gives no reason to pause because the district court held that the elements of boundary by practical location had been met and the boundary was established along the driveway and to the lake.

The Fedoruks rely heavily on a single case to support their contention that the district court's award of a mere easement after finding a boundary by practical location "is not … unprecedented in Minnesota," citing *Moore v. Henricksen*, 282 Minn. 509, 517, 165 N.W.2d 209, 216 (1968). But the Fedoruks' reliance on *Moore* overlooks *Moore's* express repeating of Minnesota's oft-stated, black-letter law on this issue, and they also misread *Moore's* analysis. The *Moore* court expressly declared the fundamental remedy: "[T]he effect of a practical location of a boundary is to divest one of property to which he has a conceded title by deed." *Id.* at 516, 165 N.W.2d at

215. The *Moore* analysis, which clearly rests on that plain statement of settled law, undercuts the Fedoruks' argument even further. Reflecting on the district court's mistaken finding in *Moore* that the evidence had established a title-transferring boundary by practical location, the supreme court indicated openly that the district court correctly ended its analysis without any basis to consider the separate claim that there is a lesser interest of a prescriptive easement: "This issue [of whether there is a prescriptive easement] is somewhat complicated by the fact that the trial judge, having decided as he did [that there was a boundary by practical location], *had no occasion* to make any ultimate finding as to the creation of such an easement." *Id.* 282 Minn. at 517, 165 N.W.2d at 216 (emphasis added). And this supreme court dicta—anchored by the invariable result in our cases of the placement of a new boundary once it has been established by practical location—is our holding today: The district court, upon deciding as it did that the disseizors "have established a boundary by practical location," had no occasion to make any ultimate finding as to the creation of a prescriptive easement.

The district court treated the alternative nature of Gabler and the Fredrickses' claims as inviting the court to select between two acceptable remedies: "Plaintiffs have proven through clear and convincing evidence that they are entitled to either a prescriptive easement for use of the driveway or a boundary by practical location. As this Court finds Plaintiffs have proved entitlement under either theory, the Court must choose one." But on review we conclude that this approach does not accurately reflect the claims.

Fairly construed, the complaint and argument instead included a principal theory of recovery (boundary by practical loca-

tion), with an alternative fallback theory of lesser recovery (easement by prescription) to be considered in case the principal theory failed. Gabler and the Fredrickses' complaint asks first that the district court "decree that [they] have a Boundary by Practical Location," and only "AS AN ALTERNATIVE" to "decree that [they] have an exclusive Easement by Prescription." Their written final argument correspondingly contended strongly for a finding that they had established a boundary by practical location, having only a short, conclusory reference to easement by prescription clearly as a secondary, alternative position. They were entitled to consideration of their primary cause of action on the merits, with a corresponding judgment. *Cf. id.* 282 Minn. at 517, 165 N.W.2d at 216 ("[The district court], having decided as [it] did [that a boundary by practical location was established], had no occasion to make any ultimate finding as to the creation of such an easement.").

The Fedoruks reference this court's dicta in *Skelton v. Doble* for the proposition that a boundary established by practical location does not affect ownership. 347 N.W.2d 81, 83 (Minn.App.1984), *review denied* (Minn. July 26, 1984). We do not read *Skelton* so broadly. In *Skelton,* we considered whether the district court erred by not allowing a purchasing landowner a trial on the issue of ownership of disputed property based on practical location of the boundary. *Id.* at 82. The district court held that the other landowner made a legally ineffective sale purportedly conveying a 3.47–acre parcel and that the doctrine of practical location was inapplicable because "[t]he doctrine is intended to resolve boundary line disputes, *not* to establish ownership of substantial parcels of land. Expanding the doctrine ... would undermine the statute of frauds and the recording act." *Id.* at 83 (emphasis in original). Although we held that the dis-

trict court appropriately decided the effectiveness and scope of the purported transfer by quitclaim deed without broaching the assertion of boundary by practical location, we certainly did not reject a century of Minnesota case law instructing that a boundary established by practical location becomes the new boundary as a matter of law with title transferring to the disseizor upon the occurrence. The holding of *Skelton*—"we conclude that the doctrine of practical [location] does not apply"— should not be misread to suggest that when the doctrine clearly *does* apply and a boundary is clearly established, as the district court determined here, the judgment may disregard the boundary. *Id.*

In addition to the uniform body of Minnesota case law guiding our decision, cases from other jurisdictions indirectly support our conclusion that once the district court determined that a boundary by practical location was established, the judgment should have recognized the boundary. *See Matthews v. Matthews,* 292 Ala. 1, 5, 288 So.2d 110, 113 (1973) (holding that "relief granted to a party in equity must be within the scope of the issues as framed by the pleadings"); *Kieffer v. Van Leeuwen,* 355 Mich. 430, 436–37, 94 N.W.2d 793, 796 (Mich.1959) (finding that the district court erred when it entered an order granting the plaintiff a life estate instead of the fee simple that the jury found the plaintiff entitled to); *Joseph D. Shein, P.C. v. Myers,* 394 Pa.Super. 549, 558, 576 A.2d 985, 989 (1990) ("Having decided that the breakaway attorneys' behavior met the legal test and constituted tortious interference, [the district court] is required to recognize and to carry out the legal effect of this decision. . . ."); *Brown v. Evarts,* 128 Vt. 1, 8, 258 A.2d 471, 475 (Vt.1969) ("[T]he decree must follow the result demanded by the requested findings.").

We hold that the district court erred as a matter of law by failing to enter judgment recognizing the boundary by practical location after it determined that Gabler and the Fredrickses had established the boundary by clear and convincing evidence.

## II

 Gabler and the Fredrickses challenge the district court's award of damages to the Fedoruks and the method by which the district court computed those damages. We review a district court's award of damages for an abuse of discretion. *Robert W. Carlstrom Co. v. German Evangelical Lutheran St. Paul's Congregation,* 662 N.W.2d 168, 173 (Minn.App. 2003). We conclude that the district court abused its discretion by awarding the Fedoruks damages after entering judgment in favor of Gabler and the Fredrickses. We have found no caselaw supporting an award of damages to a landowner to compensate for the value of interest in land surrendered by the landowner's long-term acquiescence to a practical boundary that differs from the recorded boundary. The same principles that require the district court to afford the full land-transfer remedy to a disseizing landowner after proof of a boundary by practical location limit the district court's authority to effectively withhold the remedy by requiring payment for it. *See Ehle,* 293 Minn. at 183, 197 N.W.2d at 459 (stating that divestment of title by adverse possession "bars *any remedy* of the record owner" (emphasis added)). We hold that the district court abused its discretion by awarding damages to the Fedoruks after it determined that they had acquiesced in the relocation of the boundary established by practical location. We need not address the additional argument that the damages award rests on various other errors, such as the Fedoruks' failure to plead damages, the fact

that damages were not fully litigated, or the claim that the damages were miscalculated.

## DECISION

We hold that the district court erred when its judgment failed to recognize and give effect to its finding and conclusion that Gabler and the Fredrickses had established a boundary by practical location through acquiescence. We also hold that the district court exceeded its discretion when it awarded the Fedoruks damages. We reverse and remand for the district court to amend its judgment consistent with this opinion by issuing an order recognizing the boundary where the district court found it was established by practical location.

**Reversed and remanded.**

JOHNSON, Judge (dissenting).

I respectfully dissent from the opinion of the court. A district court sitting in equity has broad discretion to fashion an equitable remedy based on the particular facts of a given case. In this case, the district court granted the Gablers a prescriptive easement that would allow them to continue using the driveway that connects their home to the nearest public road. I would conclude that the district court did not abuse its broad discretion when it granted the Gablers that equitable remedy and declined to grant the broader equitable remedy of a boundary by practical location.

In describing traditional principles of American law, the United States Supreme Court has said that, as a matter of "comprehensive application,"

> courts of equity ... are clothed with large discretion to model their judgments to fit the exigencies of the particular case.... To forget it is to forget equity's special function and historic significance. The transcendence of this

doctrine derives from the recognition that without it the effort to dispense equal justice under law would all too often be frustrated....

We are dealing here with the requirements of equity practice with a background of several hundred years of history.... The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims....

*United States v. E.I. du Pont de Nemours & Co.*, 366 U.S. 316, 357–58, 81 S.Ct. 1243, 1266, 6 L.Ed.2d 318 (1961) (quotations omitted); *see also Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 336, 119 S.Ct. 1961, 1976, 144 L.Ed.2d 319 (1999). " 'Since all or almost all equitable remedies are discretionary, the balancing of equities and hardships is appropriate in almost any case as a guide to the chancellor's discretion.' " *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 193, 98 S.Ct. 2279, 2301, 57 L.Ed.2d 117 (1978) (quoting D. Dobbs, *Remedies* 52 (1973)).

A district court's discretion to fashion an equitable remedy includes the discretion to order a narrow remedy instead of a broad remedy, even if a plaintiff has proved facts that would justify the broad remedy. In some situations, a district court even may decline to order any equitable remedy. As a leading treatise has explained, "After balancing the equities and hardships a court might deny all [equitable] relief to the plaintiff [or, alternatively,] simply limit relief in accord with its view of the equities or hardships." 1 Dan B. Dobbs, *Law of Remedies* 113 (2d ed.1993). Stated differ-

ently, "courts may recognize the plaintiff's right, and yet refuse to enforce it, or enforce it in limited ways," or "narrow the remedy to reflect something less than the right the plaintiff began with," even in the absence of an equitable defense. *Id.* at 109, 113.

The Minnesota Supreme Court has recognized that a district court sitting in equity has broad discretion when determining an equitable remedy. *Nadeau v. County of Ramsey,* 277 N.W.2d 520, 524 (Minn. 1979). Sometimes discretionary considerations are embedded within the enumerated elements of an equitable theory of relief. *See Olson v. Synergistic Tech. Sys., Inc.,* 628 N.W.2d 142, 152 (Minn.2001) (discussing equitable nature of promissory estoppel, including third element, whether "the promise [must] be enforced to prevent injustice"). But sometimes the discretionary factors relevant to an equitable theory are considered after the pertinent facts are determined. For example, "A party does not have an automatic right to specific performance as a remedy for breach of a contract; the district court must balance the equities of the case and determine whether the equitable remedy of specific performance is appropriate." *Dakota County H.R.A. v. Blackwell,* 602 N.W.2d 243, 244 (Minn.1999) (citing *Boulevard Plaza Corp. v. Campbell,* 254 Minn. 123, 134, 94 N.W.2d 273, 283 (1959)). As another example, the doctrine of res judicata is defined by enumerated elements that must be proved, *see Brown–Wilbert, Inc. v. Copeland Buhl & Co.,* 732 N.W.2d 209, 220 (Minn.2007), but it nonetheless remains a "flexible," "equitable doctrine that must be applied in light of the facts of each individual case." *R.W. v. T.F.,* 528 N.W.2d 869, 872 n. 3 (Minn.1995). Accordingly, after considering the evidence on each of the enumerated elements of res judicata, a court may inquire whether the doctrine's "application would work an injustice on the party against whom estoppel is urged." *Id.*

The importance of equitable discretion in boundary-dispute cases is reflected in *Wojahn v. Johnson,* 297 N.W.2d 298 (Minn.1980). After fixing the location of a boundary, the district court enjoined the plaintiffs from trespassing on the defendants' property. On appeal, the supreme court held that it was reversible error for the district court to have entered an injunction as a matter of course without considering a more equitable resolution. The court wrote:

> It is true that in the ordinary run of cases a "[p]ermanent injunction is a proper remedy to restrain a continuous and repeatedly threatened trespass." *However, injunction is an equitable remedy, involving the equitable jurisdiction of the court, and an injunction should not be issued where it would be grossly inequitable to do so....*
>
> *[W]e feel that a balancing of the equities is more just than the automatic grant of an injunction as is typically the case.*

*Id.* at 307 (emphasis added) (quotations omitted). The supreme court remanded the case so that the district court could consider granting an easement to the plaintiff, which would allow the plaintiffs as well as the defendants to continue using the driveway. *Id.* at 307–08. The *Wojahn* opinion illustrates that a district court has broad discretion to fashion an equitable remedy in a boundary-dispute case based on the particular facts of the case.

In this case, the district court issued a thorough 12–page order and memorandum. In relevant part, the district court concluded as follows:

> Plaintiffs have proved through clear and convincing evidence that they are entitled to either a prescriptive easement for use of the driveway or a bound-

ary by practical location. As this Court finds Plaintiffs have proved entitlement under either theory, the Court must choose one. In the context of this case, the Court feels the most just resolution is to grant Plaintiffs a prescriptive easement over Defendants' land. This entitles Plaintiffs to use the driveway in the same manner as they have historically used it, unimpeded by Defendants, while allowing Defendants to maintain title to the land itself.

The district court's analysis reflects a deliberate weighing of the equities and a conscious attention to the appropriateness of its chosen remedy. The district court's judgment recognized both the Gablers' interest in continuing to use the driveway and the burdens imposed on the Fedoruks' property interests. The district court selected a remedy that was sufficient to allow the Gablers to accomplish their primary goal without providing them additional property rights. It is appropriate for a district court to consider costs and benefits when fashioning an equitable remedy and to seek a remedy that is efficient. "No remedial analysis is complete until the costs and benefits have been counted," and "judges will want to consider the alternatives before inflicting a remedy that costs more to the defendant than it is worth to the plaintiff." Dobbs at 33, 35–36; see also generally id. at 36–50. The district court's chosen remedy not only made a distinction between ownership and an easement but also between a larger and a smaller geographic area. The latter distinction prevented the Gablers from expanding the width of their lot in the area between the driveway and the lake, which would have added to their shoreline (with a corresponding contraction in the length of the Fedoruks' shoreline), due to the actions of the Gablers' predecessors-in-interest, who mistakenly built a driveway outside the boundaries of their own lot. This is a classic example of a district court's discretionary consideration of the equities when fashioning an equitable remedy.

The majority extracts a short passage from Moore v. Henricksen, 282 Minn. 509, 165 N.W.2d 209 (1968), which the majority acknowledges to be dicta, and adopts it as a rule of law. The passage cannot be interpreted to preclude the equitable relief awarded by the district court in this case. The supreme court merely referred to the fact that the district court, having ruled in plaintiff's favor on two other theories of relief, elected not to expressly consider the plaintiff's third theory. The district court apparently believed that an analysis of the third theory was unnecessary. The Moore court did not hold, and did not suggest, that a district court may not simultaneously consider the issue of boundary by practical location and the issue of prescriptive easement and fashion a remedy based on the latter but not the former.

None of the other cases on which the majority relies is inconsistent with the long-recognized discretion of a district court to balance equitable considerations and award a narrower equitable remedy than might have been justified by the evidence. In none of the cases cited by the majority did the supreme court or this court overrule a district court that had fashioned an equitable remedy that was narrower than the broadest possible form of relief. The cases cited are descriptive, not prescriptive, and they describe only the tendencies of district courts in this type of case. Even if a certain form of equitable relief is typical or favored, it is not automatic. See Wojahn, 297 N.W.2d at 307 (stating that equitable remedy should not be ordered if "it would be grossly inequitable to do so"); Lindquist v. Weber, 404 N.W.2d 884, 887 (Minn.App. 1987) ("Mindful that the proceeding to ac-

quire prescriptive rights to land is equitable in nature, we agree with the trial court that it would be highly inequitable to deny respondents' claim under the facts of this case."), *review denied* (Minn. June 26, 1987). It may be that district courts often do not fully utilize their discretion when sitting in equity, but that does not mean that district courts do not have that manner of discretion. As the supreme court has stated, "a party bringing an equitable action must maintain it on equitable grounds or fail, even though he prove a good cause of action at law on the trial." *First Div. St. Paul & Pac. R.R. Co. v. Rice*, 25 Minn. 278, 284 (1878).

In light of the broad discretion historically afforded to district courts, an abuse-of-discretion standard of review should apply to this case. *See Nadeau*, 277 N.W.2d at 524 ("Granting equitable relief is within the sound discretion of the trial court. Only a clear abuse of that discretion will result in reversal."); *Claussen v. City of Lauderdale*, 681 N.W.2d 722, 726 (Minn. App.2004) (applying abuse-of-discretion standard of review in case involving adverse claims to property); *Block v. Sexton*, 577 N.W.2d 521, 526 (Minn.App.1998) (holding that "district court acted well within its discretion by limiting [easement's] width"). The majority opinion effectively deprives a district court of any discretion in fashioning a remedy in this type of case. A district court sitting in equity should not be obligated to act so mechanically. Furthermore, it is simply unnecessary to impose such tight constraints on a district court's equitable powers. It has not been demonstrated that the caselaw that has existed for many years is unworkable or unjust on a broad scale.

Having concluded that the district court did not abuse its discretion by awarding the Gablers a prescriptive easement, I also would conclude that the district court did not abuse its discretion by awarding a payment of money to the Fedoruks to compensate them for the value of the property interest that was transferred to the Gablers. The award of money damages has legal support in *Wojahn*, where the supreme court stated that, on remand, the district court could award "the remedy of damages [to] compensate [defendants] for plaintiffs' future use of the driveway in the nature of an easement for ingress and egress to their home." 297 N.W.2d at 308. The supreme court further stated that "the measure of such damages should be the difference in value of the defendants' property with or without future use." *Id.*

For these reasons, I would affirm the judgment of the district court.